A92A1240. ROGERS v. THE STATE.
A92A1317. TOWNSEND v. THE STATE.
(423 SE2d 435)

JOHNSON, Judge.

Robert Lee Townsend and Lee A. Rogers were indicted for armed robbery; Rogers was also charged with giving a false name to an of-

ficer. Tried jointly, they were convicted on all counts and appeal.

The 70-year-old victim, William McNeese, was working in his yard at 9:00 a.m. when two men approached him. The taller man "jerked" a gun in front of McNeese's face while the second man, who McNeese described as having facial hair and a smaller build, ran around behind McNeese and took his wallet containing cash, his checkbook, and keys from his pockets. He described the gun as black or dark in color. Telling McNeese to go inside his house, the two men walked off in the direction of a corner grocery and diner. McNeese and his wife immediately notified the police. A witness who was working at a nearby produce stand that morning observed either a Ford Granada or a Mercury Monarch with two males inside drive very slowly back and forth in the vicinity of the McNeese residence. Within ten minutes of learning of the robbery, he reported this to the police. A lookout was posted and a deputy of the Catoosa County Sheriff's Office spotted a vehicle which matched the description going west on Highway 2. Calling for a backup, he followed the car into a convenience store parking lot and told the occupants they were under arrest. Upon searching the interior of the vehicle the officers found a loaded .22 caliber dark blue steel pistol under the front passenger seat and McNeese's checkbook on the front seat. Less than 30 minutes after he was robbed, McNeese was taken to the convenience store and positively identified both men as the perpetrators. At trial he again identified Rogers as the man who rifled his pockets and Townsend as the one who held the gun.

1. Both appellants assert that the State failed to carry its burden of proving that McNeese's in-court identification was not tainted by his prior one-on-one identification. Thus, they argue, the trial court erred in allowing McNeese to make an in-court identification. They argue that the showup was impermissibly suggestive because the evidence showed McNeese had been informed the perpetrators had been caught and further because they saw his checkbook in the police car before he made his identifications. Finally, they assert that such a showup was unnecessary, as no specific emergency existed at the time. However, we find there was no substantial likelihood of irreparable misidentification, and therefore no reversible error.

" 'Pre-indictment confrontations should be scrutinized to determine if they are unnecessarily suggestive and conducive to irreparable mistaken identification. The totality of the circumstances must be viewed to determine if there is a "likelihood of misidentification which offends against due process and 'the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the wit-

ness at the confrontation.' (*Neil v. Biggers*, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1982).)" [Cit.]' [Cit.]" *Hood v. State*, 199 Ga. App. 774, 775-776 (406 SE2d 120) (1991). "Although the practice of showing suspects singly to a witness for identification purposes has been widely condemned, [cit.], 'our appellate courts have consistently upheld the admission of in-court identifications when prior one-on-one showups are reasonably and fairly conducted at or near the time of the offense. (Cits.)' [Cit.]" *Baines v. State*, 201 Ga. App. 354, 357 (4) (411 SE2d 95) (1991). Accord *Andrews v. State*, 201 Ga. App. 329, 330 (1) (411 SE2d 52) (1991); *McCoy v. State*, 190 Ga. App. 258 (3) (378 SE2d 888) (1989).

The robbery here occurred in bright daylight and neither perpetrator had his face hidden or covered. The victim noted that the gunman was taller and the one who removed his possessions from his pockets was slighter and had a beard. Less than two months later at trial he made positive in-court identifications of each defendant. The pistol, as he described it, was found in the suspects' car. Here, as in *Hood*, supra, "[e]xcept for the passage of time, the so-called show-up in this case was somewhat akin to an immediate on-the-scene confrontation between the victim and a suspect. Considering the relevant factors, it was not unnecessarily suggestive, and under the totality of the circumstances [McNeese's] recognition of appellant[s] when [he] came to the [convenience store] did not give rise to a likelihood of misidentification but was instead reliable. [Cits.] Thus, [McNeese] was not precluded from making the in-court identification." Id. at 776. Accord *Williams v. State*, 188 Ga. App. 496, 498 (2) (373 SE2d 281) (1988).

2. Rogers further contends that the trial court erroneously allowed McNeese to identify him in court because his identification was based upon events following an illegal arrest in violation of his constitutional rights. "Our courts have held that a warrantless arrest legal under federal law — that is, one made on the basis of probable cause — is legal under state law, and that the requirements of OCGA § 17-4-20 (a) and federal law are the same. *Durden v. State*, 250 Ga. 325, 326-327 (1) (297 SE2d 237) (1982). 'Under this standard an arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed . . . an offense. (Cit.)' Id. at 326 (1)." *State v. Thurmond*, 203 Ga. App. 230, 231 (416 SE2d 529) (1992).

The evidence here showed that shortly after the robbery was reported, a police lookout was broadcast for two males in a gray, four-door Ford Granada, an automobile almost identical in body style to a Mercury Monarch which the appellants were driving when stopped. A

deputy spotted a vehicle matching this description, followed it into the convenience store parking lot, and told the occupants they were suspects in an armed robbery. He instructed them to put their hands on the trunk. Some 30 seconds later other law enforcement personnel began arriving at the scene. Rogers gave a false name, stated he had no identification and could not produce a driver's license. Both suspects were then handcuffed and placed in a patrol car. The car was searched and a checkbook and pistol matching the description McNeese had given were found inside. The victim was brought to the convenience store within an hour of the incident and confirmed that the suspects were in fact the perpetrators.

"Although the description of the car . . . did not exactly match the radio message the officer received, there is no requirement that [it] do so [cit.], and police officers are authorized to use information received by radio as part of their basis for establishing probable cause. [Cit.]" *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). Further, considering the totality of the circumstances, the evidence shows that appellants were arrested in the parking lot of the convenience store because they were no longer free to go when they were handcuffed and put in the back of a police car. "Detention beyond that authorized by a *Terry* stop is an arrest and no formal procedures are required. [Cit.] Therefore, since the police officer had probable cause to arrest [appellants] at the moment he did so, the arrest was valid under both the United States and Georgia Constitutions. [Cits.]" (Indention omitted.) Id. at 735.

3. Rogers protests that the trial court committed reversible error by allowing the State to introduce his answers to questions asked during a custodial investigation conducted after he refused to sign a waiver of rights form. After holding a *Jackson-Denno* hearing, the trial court found that Rogers had been fully advised of his constitutional rights; that his statements to the detective interrogating him were freely and voluntarily made without hope of benefit or reward, or as a product of duress; and that he was not acting under any mental or physical disabilities which prevented him from understanding his rights. The detective testified that when he advised Rogers of his rights through the use of a *Miranda* form and asked him to sign it, Rogers "said he wasn't going to sign any type of paperwork at this time." However, Rogers did not ask for an attorney or refuse to answer any questions after the form was read to him. He gave false information as to his name, address, place of birth and social security number. When Rogers professed ignorance concerning certain individuals whose names were found in a briefcase taken into evidence, the detective terminated the interview.

"The trial court's findings as to factual determinations and credibility relating to the admissibility of statements will be upheld on ap-

peal unless clearly erroneous. The trial court, by its ruling that the statement was voluntarily made, accepted the facts as put forth by the State, and this finding [was] not clearly erroneous." (Citations and punctuation omitted.) *Dillman v. State*, 201 Ga. App. 833, 835 (2) (412 SE2d 557) (1991). Therefore, no reversible error occurred.

4. Rogers contends that the trial court erroneously found that the State's final peremptory strike was exercised in a racially-neutral manner. Because there was only one black venireman, he argues that a prima facie case of racial discrimination was shown. The prosecutor was called upon to proffer a race-neutral explanation for challenging the black venireman in accordance with *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). See *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987). The prospective black juror was a 22-year-old single male, and the prosecutor explained that as a general rule he preferred not to take young, single men and had also struck an unmarried white male of similar age. Another factor was information he received prior to jury selection that a member of the prospective black juror's family was involved in drug activity which, in his past experience, made him less reliable. The trial court found no *Batson* violation.

In *Durham v. State*, 185 Ga. App. 163, 166 (3) (363 SE2d 607) (1987), where the State also struck the only black person on the panel of prospective jurors, this court stated that while the total elimination of blacks from the venire established a prima facie case of racial discrimination, "due to the absence of any true 'pattern' of strikes giving an inference of discrimination and the minimal disparity between the black percentage of the jury and the black percentage of the panel we view this as an extremely weak prima facie case established by defendant. '(A) weak prima facie case may be rebutted more readily than a strong one.' [Cit.]" We agree that the prosecutor's explanations were credible and offered a sufficiently neutral and legitimate explication to rebut any presumption of racial discrimination. "Because the U. S. Supreme Court has cautioned us that the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility . . . a reviewing court ordinarily should give those findings great deference." (Citations and punctuation omitted.) *Cook v. State*, 199 Ga. App. 14, 15 (1) (404 SE2d 128) (1991). See *Randolph v. State*, 203 Ga. App. 115 (3) (416 SE2d 117) (1992).

5. During his closing argument the prosecutor referred to appellants as being stupid. They complain that the trial court's failure to correct the prejudicial effect upon the jury caused by the prosecutor's remark constituted reversible error. Townsend asserts that the trial judge compounded this error by commenting on the evidence when he requested corrective action. When the comment was made, Rogers' attorney stated that he objected "strenuously to that kind of argu-

ment" and asked for a ruling. He was joined by Townsend's counsel in this objection. The trial court instructed the jury that counsel for the State and for the defendants could make such statements or summations as had been proved during the trial of the case, or anything they could reasonably deduce therefrom, and ordered the State to proceed. Objection was made that in so instructing the jury the court had improperly commented on the evidence, but neither lawyer asked for a mistrial or curative instructions.

We do not find the prosecutor's remark or the court's instructions to have prejudiced the appellants for the reasons assigned. OCGA § 17-8-75 "is designed to prohibit counsel from stating prejudicial facts which are not in evidence. [Cit.] However, it is permissible for counsel to draw deductions from the evidence regardless of how illogical and unreasonable, and this is a 'matter for reply by adverse counsel, not for rebuke by the court.' [Cit.] Thus it was for defense counsel to reply to the district attorney's deduction that the [appellants were stupid]." *Adams v. State*, 260 Ga. 298, 299 (1) (392 SE2d 866) (1990). " 'If the challenged remark is not such as would be likely to prejudice the defendant's right to a fair trial, such will not constitute reversible error. (Cit.)' *Davis v. State*, 178 Ga. App. 357, 360 (343 SE2d 140) (1986)." *Hargrove v. State*, 202 Ga. App. 854, 856 (2) (415 SE2d 708) (1992).

6. Townsend contends that the trial court erred in depriving him of the right to make the concluding argument to the jury because he did not tender any evidence in the case. However, his co-defendant Rogers called a witness and also introduced an exhibit which was admitted without objection. Generally, if the defendant in a criminal case introduces no evidence at trial, he is entitled to present arguments to the jury both before and after the state makes its argument. OCGA § 17-8-71. This right is not forfeited when the defendant testifies in his own behalf, provided he introduces no other evidence. OCGA § 24-9-20. However, the right of a defendant introducing no evidence at trial to open and close the final argument is not absolute. In *Lackey v. State*, 246 Ga. 331, 337 (10) (271 SE2d 478) (1980) a defendant was denied the right to closing argument when counsel cross-examined a co-defendant's witness. He had introduced no other evidence in his own behalf and had not taken the stand. *McDuffie v. Jones*, 248 Ga. 544, 546-547 (2) (283 SE2d 601) (1981) appears to go one step further, holding that if one defendant offers evidence in the trial of co-defendants, the right to make the closing argument is lost to all defendants. Accordingly, this enumeration presents no grounds for reversal.

*Judgments affirmed. Pope, J., concurs. Carley, P. J., concurs in Divisions 1, 3, 4, 5, 6, and in judgment.*

*Robert L. Stultz, Ronald C. Goulart,* for appellant (case no. A92A1240).

*John O. Wiggins,* for appellant (case no. A92A1317).

*Ralph L. Van Pelt, Jr., District Attorney, Michael R. McCarthy, Assistant District Attorney,* for appellee.