A06A0069. ROBERSON v. THE STATE.
A06A0070. IVORY v. THE STATE.
(627 SE2d 161)

ADAMS, Judge.

In these companion cases, Zachary Wayne Roberson and Dennis Ivory appeal from their aggravated assault conviction. Both defendants assert that the evidence was insufficient to support their conviction, and Roberson makes the additional claim that the trial

---

[15] *Graham v. State*, 275 Ga. 290, 293 (2) (565 SE2d 467) (2002).
[16] *Robinson v. State*, 260 Ga. App. 186, 187 (581 SE2d 285) (2003).

court should have granted his motion to suppress the victim's pre-trial identification of Roberson as a participant in the crime. For the reasons set forth below, we affirm.

On appeal, we|must view the evidence "in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995). Viewed in this light, the record shows that on November 19, 2002, between 4:45 p.m. and 5:15 p.m. Orlando Tasby, who lived in the Park Knoll apartment complex, heard yelling and went outside to investigate. He and a female neighbor found a bloody, Hispanic man lying on the ground asking for help and saw two young black men run to a green car and get into the back seat. They called 911 and waited for the police to arrive.

At 5:04 p.m., a Cobb County police officer, Scott Northrop, received a dispatch to investigate an armed robbery in progress at the Park Knoll apartment complex involving a gray-green Dodge Neon with North Carolina plates. When Northrop arrived, he found a man kneeling on the ground with abrasions on his knee, right hand, and face; both of his hands were shaking and he was a nervous wreck.

Northrop's backup officer, Berry Truelove, testified that shortly after arriving at the Park Knoll apartment complex, he left to patrol the area and look for the green Neon with North Carolina tags. He drove down Delk Road and turned into the Highland Falls apartment complex, which was approximately one-eighth of a mile away from Park Knoll, where the victim was found. Officer Truelove saw a green Dodge Neon with North Carolina tags occupied by defendants Roberson and Ivory pull into the Highland Falls complex as he was leaving. Officer Truelove turned his patrol car around, activated his blue lights, and pursued the Neon, which sped away rapidly. When Officer Truelove caught up with appellants, he handcuffed them and placed them in separate patrol cars.

Immediately after Officer Truelove secured Roberson and Ivory, a security guard for the apartment complex notified the police that he had found a gun inside a black ski cap in the parking lot in front of one of the buildings that defendants had driven past when they sped away from Officer Truelove. It was found approximately 75 to 100 yards away from where the defendants stopped. The victim identified this gun as the one that was used to threaten him.

Cobb County Police Detective Brad McEntyre arrived at the Highland Falls apartment complex shortly after hearing police radio traffic about Officer Truelove detaining two armed robbery suspects in that location. After securing the gun that had been found by the

security guard, Detective McEntyre decided to bring the victim to that location to look at the suspects. After being brought to the scene, the victim remained in another detective's car. Detective McEntyre then asked Roberson and Ivory to stand, one at a time, in front of the detective's car for the victim to view. Because it was starting to get dark, the men were illuminated by the headlights of the detective's car and a spotlight from another patrol car. The victim identified both men and they were placed under arrest and in the back of Officer Truelove's patrol car.

When Officer Truelove was leaving the apartment complex to transport the defendants to the police department, he stopped in front of the building where the gun was found to talk to another officer. While Officer Truelove was talking, Michael Brown walked up to his patrol car and asked what was going on with his cousin, Ivory, who was sitting in the back of the patrol car. When Brown repeatedly placed his hands in his pockets after being instructed not to do so, Officer Truelove obtained his consent to empty his pockets to search for weapons. The search revealed a Texaco gas card with the victim's name on it, and Truelove arrested Brown. Immediately after transporting Brown, Roberson, and Ivory to police headquarters, Officer Truelove found the victim's key chain with the word "amigo" on it in the back seat of his patrol car.

When the police searched the green Neon after the appellants' arrest, they found a black hat with the words Soy Mexico on it that the victim identified as his. Police also discovered a white t-shirt that appeared to have blood on it.

After his arrest, Brown made a deal with the State in which he would plead guilty to robbery, serve four years in prison, and testify against Roberson and Ivory. At trial, Brown explained that he, Ivory, and Roberson needed money and decided to steal drugs from the victim. Brown called Valencia and told him that he wanted to buy drugs. They agreed to meet at a Waffle House. When Valencia asked to see the money, Brown told him that it was at another location and asked Valencia to ride with them in Roberson's car to get it. They drove to an apartment complex and pretended that the money was in a building there. When Valencia got out of the car, he tried to run. Ivory grabbed him, and Brown hit him on the shoulder with a baseball bat to stop him from getting away. After Roberson backed the car up and popped the trunk, Ivory pointed a gun at Valencia and ordered him to empty his pockets and get into the trunk. Valencia handed Brown a set of keys and a credit card and got into the trunk.

Ivory and Brown got into the back seat and Ivory lowered a portion of the back seat in order to have access to Valencia. While Roberson drove to the back of the Park Knoll apartment complex, Ivory repeatedly hit Valencia with the gun while asking him, "where

are the drugs?" After a while, the men decided that Valencia did not have any drugs and might have been planning to rob them. They told Valencia that they were going to drive him to a Howard Johnson and let him go. While they were leaving the Park Knoll apartments, Valencia escaped from the trunk.

After Roberson started to drive the three men out of Park Knoll following Valencia's escape, Brown asked him to stop the car and let him out. He then took a shortcut through the woods and went to a friend's house in the Highland Falls apartment complex. While there, he learned that Roberson and Ivory were in police custody and went outside to ask the police what had happened, resulting in his arrest by Officer Truelove.

Officer Northrop testified that the victim's last name was Valencia and identified Valencia in photographs depicting his injuries. An investigator with the district attorney's office testified about the many methods he used to try to locate Valencia before trial and that each was unsuccessful. Valencia did not testify at trial.

### Case No. A06A0069

1. Roberson contends that the trial court should have granted his motion to suppress evidence of the victim's show-up identification of him as one of the perpetrators because it was impermissibly suggestive.[1]

> When assessing the admissibility of such identification evidence, we apply a two-part test. . . . First, we determine whether the identification procedure was impermissibly suggestive. If it was, we then consider the totality of the circumstances to determine whether a very substantial likelihood existed of irreparable misidentification.

(Citation and punctuation omitted.) *Young v. State*, 272 Ga. App. 304, 310 (4) (a) (612 SE2d 118) (2005). Thus, "[t]he threshold inquiry is whether the identification procedure was impermissibly suggestive." (Citation and punctuation omitted.) *Maddox v. State*, 218 Ga. App. 320, 323 (2) (461 SE2d 286) (1995).

"Although the practice of showing suspects singly to a witness for identification purposes had been widely condemned, our appellate

---

[1] Because Roberson failed to make confrontation clause objections to this testimony below, and has also failed to raise confrontation clause issues on appeal, we cannot consider the application of *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), to the record before us. See *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004).

courts have consistently upheld the admission of in-court identifications when prior one-on-one showups are reasonably and fairly conducted at or near the time of the offense." (Citations and punctuation omitted.) *Rogers v. State*, 205 Ga. App. 739, 741 (1) (423 SE2d 435) (1992) (physical precedent only on other grounds). Practical considerations that render one-on-one identifications permissible "include the necessity of a speedy police investigation and the necessity to resolve promptly any doubts as to identification so as to enhance the accuracy and reliability of the identification, thus expediting the release of innocent subjects." (Citations and punctuation omitted.) *Baynes v. State*, 218 Ga. App. 687, 688 (1) (463 SE2d 144) (1995).

In this case, detectives conducted the show-up within one hour of the victim's escape. The detectives took care to shield the green Neon from the victim's view, and Roberson and Ivory were shown one-by-one to the victim outside of the patrol cars in which they had been placed. Based on these facts and circumstances, we find that the show-up was reasonably and fairly conducted. The trial court did not err by denying Roberson's motion to suppress because the show-up was not impermissibly suggestive. See *Williams v. State*, 188 Ga. App. 496, 498 (2) (373 SE2d 281) (1988); *Murphy v. State*, 158 Ga. App. 278, 279 (2) (279 SE2d 728) (1981).

2. In his remaining enumeration of error, Roberson contends that the evidence was insufficient to support his conviction if this Court concludes that the trial court should have granted his motion to suppress. Our rejection of this claim in Division 1 would ordinarily render Roberson's sufficiency argument moot. In this case, however, the victim's failure to testify at trial might render the officer's testimony about the victim's pre-trial identification inadmissible hearsay. See *White v. State*, 273 Ga. 787, 788 (546 SE2d 514) (2001).[2] Since hearsay is without probative value to establish any fact, even in the absence of objection, *Collins v. State*, 146 Ga. App. 857, 860 (1) (247 SE2d 602) (1978), we will review the sufficiency of the evidence and exclude from our consideration the victim's out-of-court identification.

Roberson argues that, without the victim's identification testimony, his conviction rests solely on the uncorroborated testimony of

---

[2] In *White*, the Supreme Court held that "[i]n the absence of some other viable hearsay exception, such as 'necessity' or 'res gestae,' a law enforcement officer may not testify to a pre-trial identification of the accused unless the person who actually made the identification testifies at trial and is subject to cross-examination." Id. In this case, Roberson's trial counsel did not make a hearsay objection and thus, there was no ruling by the trial court as to whether the identification fell within an exception to the hearsay rule. See id. (whether testimony is necessary and accompanied by particular guarantees of trustworthiness so as to fall within the necessity exception to the hearsay rule is a matter for the trial court's discretion).

Brown and must be reversed. While it is true that a conviction cannot rest on the uncorroborated testimony of an accomplice, OCGA § 24-4-8,

> [i]t is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict.

(Citations and punctuation omitted.) *Myers v. State*, 260 Ga. 412, 413 (3) (395 SE2d 811) (1990).

Evidence corroborating Brown's testimony in this case includes Tasby's testimony that he saw two men get into a green car after he found the bleeding victim. Roberson was driving a green Neon when he was stopped by the police, and a bloody shirt was found in the trunk. The police found Roberson driving the green Neon shortly after the robbery and only one-eighth of a mile away from where the victim was found. This evidence sufficiently corroborated Brown's testimony that Roberson participated in the aggravated assault. See *Myers*, 260 Ga. at 413 (3); *West v. State*, 232 Ga. 861 (209 SE2d 195) (1974).

## Case No. A06A0070

In his sole enumeration of error, Ivory contends the evidence was insufficient to support his aggravated assault conviction because the jury found him not guilty of possessing a firearm during the commission of a crime and there was no evidence that he hit Valencia with the bat. Thus, Ivory argues, there was insufficient evidence to support his conviction under an indictment alleging that he used a gun and a bat in the aggravated assault.

We find no merit in this argument. First, the inconsistent verdict rule was abolished in Georgia. See *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986). Thus, Ivory's acquittal of the possession of a firearm during the commission of a felony charge does not render the evidence that he committed aggravated assault insufficient. See *Ridley v. State*, 240 Ga. App. 307, 309 (4) (523 SE2d 383) (1999).

Second, the fact that Ivory did not personally use the bat to hit Valencia does not absolve him of criminal liability. OCGA § 16-2-20 provides that a person is a party to and guilty of a crime when he intentionally aids or abets in the commission of the crime. Thus, Ivory's conduct in aiding Brown, who actually wielded the bat, can be

used to support his aggravated assault conviction. See *Davis v. State*, 249 Ga. App. 579, 581 (1) (548 SE2d 678) (2001).

Because sufficient evidence supports Ivory's conviction under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we affirm his conviction.

*Judgments affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 9, 2006.

*Daniel L. Henderson*, for appellant (case no. A06A0069).
*David J. Koontz*, for appellant (case no. A06A0070).
*Patrick H. Head, District Attorney, Sandra G. Dawson, Amelia G. Pray, Assistant District Attorneys*, for appellee.