A95A1703. BAYNES v. THE STATE.
(463 SE2d 144)

McMURRAY, Presiding Judge.

Defendant Baynes appeals his conviction of aggravated assault. *Held:*

1. Defendant's first enumeration of error complains of the denial of his motion to dismiss the indictment due to impermissibly suggestive pretrial identification methods. While the State correctly maintains that defendant did not seek the proper remedy in his motion, we note that the trial court conducted a hearing at which evidence

was presented as to the factual circumstances related to the pretrial identification, and thus, we infer that the trial court has viewed defendant's motion to be, in substance, a motion to suppress evidence arising from the pretrial identification. Therefore, we are not prepared to reject this enumeration on a technical basis as advocated by the State. But we do approve of the trial court's denial of defendant's motion since the totality of the evidence authorizes a conclusion that the pretrial identification was reliable.

The victim was talking on a pay telephone when he was struck, spun around, and hit again. The attacker demanded the victim's money as the two stood only a foot apart. Although it was nighttime, the site was well lighted.

The victim flagged down a police officer shortly afterwards and reported the attack. The victim described his attacker as a male, about five feet and eight or nine inches tall, with thin, short hair. The victim stated the attacker was wearing a blue shirt and that he could not tell what the writing was on the front of the shirt. The victim described the car in which his attacker had left the scene as a white Mustang 5.0 with blue stripes and tinted windows occupied by two to four males. The police officer broadcast a lookout for this vehicle.

Approximately 20 minutes later, a patrolling officer discovered defendant's car. There were four males in the car. When discovered, defendant and his companions were four or five miles and approximately seven to ten minutes driving time from the location of the attack. The victim was driven to the location where defendant and his companions were found and immediately identified defendant as his attacker. At trial, the victim repeated his identification of defendant as his attacker.

"This court has thoroughly considered the dangers inherent in the practice of bringing single suspects to confront witnesses for the purpose of pre-trial identification, in particular, the danger of the ' "substantial likelihood of irreparable misidentification." (Cit.)' (*Daniel v. State*, 150 Ga. App. 798, 799 (1) (258 SE2d 604) (1979)). To evaluate that likelihood, we apply the test enunciated in *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) which requires that we consider the witnesses' opportunity to view the suspect at the time of the offense, the witnesses' degree of attention, the accuracy of the witnesses' prior description and their level of certainty. However, both state and federal courts have also recognized consistently those countervailing considerations which may render the one-on-one confrontation permissible if not desirable. These include the necessity of a speedy police investigation and the necessity to resolve promptly any doubts as to identification so as to enhance the accuracy and reliability of the identification, thus expediting the release of innocent subjects. *Bennefield v. Brown*, 228 Ga. 705 (187 SE2d 865) (1972);

*Arnold v. State*, 155 Ga. App. 782 (272 SE2d 751) (1980); see *Bates v. United States*, 405 F2d 1104 (D.C. Cir. 1968)." *Weathers v. State*, 202 Ga. App. 849, 851 (2) (415 SE2d 690).

In the case sub judice, the victim had only a brief interval to observe his attacker. The victim testified that after he was struck the first time and spun around, he was able to observe his attacker for five or six seconds before he was hit again and that the second blow affected his vision. Having just been struck and spun around without warning, it would seem reasonable to infer that the victim's attention was riveted on his attacker for this brief time. The description of the attacker given to police was not detailed and consisted of the attacker's race, height, hair length, and color of shirt. In the context of the circumstances in the case sub judice, it is significant that the victim regained his vision in time to acquire a detailed and accurate description of the car in which the attacker left the scene of the crime. And the victim's identification of defendant at the showup was immediate and certain.

We reject defendant's contention that the victim's description was inaccurate and insufficiently detailed. If defendant's shirt was aquamarine rather than blue and displayed an athletic team logo not mentioned by the victim, this distinction presented a factual issue but does not require suppression of the pretrial identification. The reliability of the victim's perceptions was also questioned because he had been drinking, but this concern was rebutted by the testimony of both the victim and the police officer whom he flagged down shortly after the crime.

Under the totality of the circumstances presented in the case sub judice, we find no error in the denial of defendant's motion predicated on the pretrial identification procedure. It appears that the showup was reasonably and fairly conducted soon after commission of the crime. *Rogers v. State*, 205 Ga. App. 739, 740 (1), 741 (423 SE2d 435).

2. Defendant contends that the trial court erred in denying a motion in limine to exclude the testimony of T. H., a juvenile. This witness testified that he was in defendant's car on the night in question and observed defendant striking the victim. Defendant maintains that the testimony of this witness should have been excluded because his name was not on the original witness list, the witness was not newly discovered, and the new witness's name was provided to defendant via an amended witness list five days prior to trial (and two days prior to jury selection). The critical distinction is whether defendant has been allowed an opportunity to interview the witness. Here there was ample time to do this. *Thrasher v. State*, 265 Ga. 401, 402 (3) (456 SE2d 578).

3. Defendant also questions the sufficiency of the evidence to authorize his conviction. But after reviewing the evidence presented at

trial, we conclude that it was sufficient to authorize the jury to find defendant guilty beyond a reasonable doubt of aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Pruitt v. State*, 217 Ga. App. 681 (1), 682 (458 SE2d 696).

4. Finally, defendant maintains that the trial court erred in quashing his subpoena of T. H.'s juvenile court record. The trial court apparently embraced the position argued by the State that defendant's only purpose in seeking to obtain the juvenile record was to use the adjudication in that file for purposes of impeachment. A juvenile court adjudication of delinquency is not a conviction of a crime. *Smith v. State*, 154 Ga. App. 190, 192 (3) (267 SE2d 826). Consequently, such an adjudication may not be used to impeach a witness. *McBee v. State*, 210 Ga. App. 182 (1) (435 SE2d 469). In the colloquy before the trial court, defense counsel conceded this point and abandoned any reliance upon impeachment as a basis for obtaining the juvenile court record.

But defense counsel continued to maintain that the subpoena should not be quashed since the juvenile record could be properly subpoenaed to be used for purposes determined to be appropriate in *Davis v. Alaska*, 415 U. S. 308 (94 SC 1105, 39 LE2d 347). In *Davis*, "the Supreme Court held that a *pending* delinquency adjudication for burglary was admissible as a *particular* attack on a witness' credibility, i.e., 'directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.' *Hines v. State*, 249 Ga. 257, 259 (2), 260 (290 SE2d 911). However, as noted by Justice Stewart in a concurring opinion, 'the (United States Supreme) Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions.' *Davis*, supra at 321." *McBee v. State*, 210 Ga. App. 182, 183, fn. 1, supra.

There is no conflict between *McBee* and *Davis* because the juvenile records at issue in *McBee* relate only to past delinquency adjudications and do not include any pending delinquency adjudication. If there were a pending juvenile adjudication with regard to T. H., then *Davis* was applicable and both of the State's arguments in support of quashing the subpoena, lack of relevance based on *McBee* and confidentiality based on OCGA § 15-11-59, lacked merit. In this connection, we note that in *Davis*, the confrontation clause rights asserted therein are held to be paramount to the interest underlying confidentiality statutes such as OCGA § 15-11-59.

During the colloquy concerning the motion to quash, defense counsel stated his understanding, apparently arising from a pre-trial conversation with T. H., that this youth had been adjudicated delinquent and was "still on some type of probation or something." If, in

fact, T. H. was on probation arising from an adjudication of delinquency, this was a pending delinquency adjudication which would render *McBee* inapposite and distinguishable on the facts, as well as place the case sub judice subject to the rule stated in *Davis*. Since the juvenile in *Davis* was on probation, it is apparent that the references in that case to pending delinquency adjudication encompassed probation.

While defense counsel's statement was not controverted, we decline to reverse defendant's conviction solely on the basis of this apparent hearsay statement. A question remains as to the actual status of any juvenile court proceeding involving T. H.

We also decline to find any waiver by defendant in connection with this issue. A definitive answer to whether defendant should have access to the juvenile record is contained therein. Defense counsel has attempted to gain access to that record and stated for the record his reason for believing that a proper basis exists for access to that record. He could have done no more.

Therefore, in order to resolve these remaining issues, the case sub judice is remanded to the trial court in order that a hearing be conducted to determine whether, at the time of trial, T. H. was on probation or otherwise subject to a pending delinquency adjudication. If a positive answer results, the trial court shall order a new trial and provide for defendant's access to T. H.'s juvenile file to the extent necessary to provide defendant an opportunity to conduct an effective cross-examination of T. H. concerning the issue of bias as required by *Davis*. If there was no pending delinquency adjudication with regard to T. H. at the time of the trial in the case sub judice, defendant's conviction must be affirmed. Should the trial court reach a conclusion that there was no such pending delinquency adjudication, the trial court shall enter an order stating this conclusion, and defendant may file, within 30 days after the entry of such order, a new appeal from his conviction limited in scope to the trial court's order entered on remand.

*Case remanded with direction. Andrews and Blackburn, JJ., concur.*

DECIDED OCTOBER 5, 1995.

*Terry N. Massey*, for appellant.
*Cheryl F. Custer, District Attorney, Nancy N. Bills, Assistant District Attorney*, for appellee.