## S99A1238. COLEMAN v. THE STATE.
### (523 SE2d 852)

HUNSTEIN, Justice.

Brian Burrell Coleman was indicted on nine counts arising out of the death and sexual assault of an unidentified woman. He was convicted on all counts and received three consecutive life sentences. He appeals from the denial of his motion for a new trial.[1]

1. The body of the unidentified victim was discovered on September 20, 1994 among weeds in a parking lot off Piedmont Avenue in downtown Atlanta. A cash register receipt with appellant's name on it, dated 8:03 a.m. the previous day, was located in a shrub two to three feet from the body. The victim died from strangulation and blunt trauma to the head. Expert testimony matched appellant's DNA to sperm found in the victim's vagina and anus as well as skin fragments found under the victim's fingernails. Statistically, no more than one in ten billion would exhibit the same DNA pattern found

---

[1] The crimes occurred on September 19-20, 1994. Coleman was indicted September 8, 1995 in Fulton County on nine counts: murder, four counts of felony murder (based on rape, aggravated sodomy, aggravated assault by beating and aggravated assault by strangulation) as well as the four felonies underlying the felony murder charges. He was found guilty on February 12, 1996 and was sentenced March 7, 1996 to three terms of life imprisonment based on the murder, rape, and aggravated sodomy convictions. His motion for new trial, filed March 20, 1996 and amended January 17, May 16 and June 6, 1997, was denied December 10, 1998. A notice of appeal was filed January 6, 1999. The appeal was docketed in this Court on May 20, 1999 and was submitted for decision on the briefs.

between appellant and the sperm retrieved from the victim's rectum; one in 800 million in the Caucasian population and one in four billion in the African-American population would exhibit the same DNA pattern found between appellant and the sperm retrieved from the victim's vagina.

In his statements to the police, appellant said that he was in downtown Atlanta the evening of September 19. Although he originally omitted any mention of the victim, after being presented with the results of the DNA testing appellant admitted that he had had sex with her. His version of the encounter with the victim was strikingly similar to the story he had given police regarding a rape complaint made against him one month earlier by a witness who testified appellant struck up a conversation with her at a downtown MARTA station; bought her food then forced her at knife point to engage in vaginal sex from the rear; attempted unsuccessfully to have anal sex with her; and placed his hands around her neck.

The evidence adduced was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the charged crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that the State erroneously withheld exculpatory and impeaching evidence in regard to a "deal" made with jail house snitch, Mark Ray, and that the State used perjured testimony when questioning Ray about that deal at trial. At the hearing on appellant's pre-trial motion to reveal the deal, the prosecutor testified that she had agreed to speak personally with the judge assigned to Ray's case at the time of his sentencing regarding his anticipated testimony for the State. She also stated that while Ray and his attorney had expressed interest in getting Ray into a drug rehabilitation program, she did not tell them Ray would get that program. At trial Ray testified to his understanding regarding the contact with his assigned judge and was subject to a thorough cross-examination by defense counsel regarding every aspect of the agreement with the prosecutor, including the manner and timing in which he revealed to the State his conversations with appellant.

At the motion for new trial hearing, Ray's former attorney testified that in response to Ray's request to be placed in the rehabilitation program, the prosecutor's reply "would be that she would do everything she could for him. I think she said she would go to bat for him, talk to the victims on the case and talk to the judge at the time of his sentencing." Ray's counsel also testified, however, that prior to trial the prosecutor canceled the agreement upon deciding not to call Ray as a witness. No other evidence was adduced regarding the agreement arranged when the prosecutor thereafter changed her decision regarding Ray's testimony. According to the parties, Ray was

subsequently tried and acquitted of the charge for which he had been incarcerated.

(a) The State is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness; a failure to disclose such an agreement constitutes a violation of an accused's due process rights. *Owen v. State*, 265 Ga. 67 (2) (453 SE2d 728) (1995). In order to establish reversible error, however, a defendant must show, inter alia, that had the evidence of the agreement been disclosed to the defendant, there existed a reasonable probability that the result at trial would have been different. *Burgeson v. State*, 267 Ga. 102, 104 (475 SE2d 580) (1996). Even assuming, arguendo, that the prosecutor's offer in regard to the rehabilitation program was included in the final agreement with Ray so that the State failed to reveal information of a type required to be disclosed under *Brady* and *Giglio*,[2] we conclude based on the DNA and similar transaction evidence establishing appellant's guilt that there is no reasonable probability the disclosure of this additional aspect to the agreement with Ray would have affected the result of the jury's deliberations. See *Owen*, supra. This same evidence, combined with our review of the in-depth cross-examination of Ray by the defense regarding his motivation for disclosing the information and the manner in which he divulged the information to the prosecution, leads us to the same conclusion regarding the State's failure to disclose allegedly impeaching evidence about the timing of Ray's disclosures to the prosecutor.

(b) Appellant also argues that Ray's testimony was perjured and the State violated his due process rights by knowingly introducing this testimony. Appellant claims that Ray perjured himself by failing to mention the rehabilitation program aspect of the agreement. Appellant has not shown, however, that Ray's testimony did not reflect Ray's understanding of that agreement and that the parties did not consider the prosecutor's contact with the judge to include a request for Ray to get the rehabilitation program. Given the nebulous details of the agreement, we cannot conclude from the record that the prosecutor knowingly used perjured testimony in this regard. See generally *Johnson v. State*, 258 Ga. 506 (4) (b) (371 SE2d 396) (1988).

Accordingly, we find no reversible error in these enumerations.

3. On the seventh day of trial, appellant sought to introduce testimony by a defense witness for the purpose of purportedly impeaching Ray's testimony by disclosing statements Ray had made to the

---

[2] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963); *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972).

witness indicating Ray had fabricated appellant's confession in order to curry favor with the State. The defense had opted into the Georgia Discovery Act, OCGA § 17-16-1 et seq., and the trial court disallowed the testimony. See OCGA § 17-16-8 (a). Appellant challenges that ruling. However, even assuming the trial court erred by excluding this evidence, considering the nature of the excluded testimony and the overwhelming evidence of appellant's guilt, we find it is highly probable that the exclusion of the proffered evidence did not contribute to the jury's verdict. See *Laney v. State*, 271 Ga. 194 (8) (515 SE2d 610) (1999).

4. "The factual findings of the trial court regarding probable cause for the issuance of a search warrant are to be upheld unless clearly erroneous. [Cit.]" *Bryant v. State*, 268 Ga. 616, 618 (6) (491 SE2d 320) (1997). The affidavit presented to the magistrate in the instant case gave details about the body of the victim, when and where the body was found, the indications on the body of "sexual and/ or body contact" with the perpetrator, and the presence within three feet of the body of a dated receipt with appellant's name. We conclude that there were sufficient facts in the affidavit to provide a substantial basis for concluding that probable cause existed for the issuance of a search warrant for appellant's blood. See id.; see generally *State v. Henderson*, 271 Ga. 264 (4) (517 SE2d 61) (1999) (magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that evidence of a crime will be found in a particular place; magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court).

5. Appellant contends he received ineffective assistance of counsel based on trial counsel's failure to file or properly argue motions to dismiss and counsel's failure to investigate the relationship between the State and Mark Ray, the jail house snitch. In order to prevail on this claim, appellant must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985).

(a) Because the evidence adduced failed to substantiate any basis for arguing that the affidavit submitted to obtain appellant's blood contained material falsehoods and/or statements made with a reckless disregard for the truth, see *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978), trial counsel's performance was not deficient for failing to assert this argument in support of the motion to suppress the first search warrant for appellant's blood.

Given our holding in Division 4, supra, that the results of that first blood test were properly admitted, appellant's argument about the effectiveness of counsel on that issue fails. Likewise, because that first warrant was proper, appellant can show no prejudice to his defense arising out of his counsel's failure to file a motion to dismiss the results of a second search warrant issued for the same purpose.

(b) Based on our review of the record, we find that appellant has failed to carry his burden of proving that his trial counsel's performance was deficient in regard to investigating the arrangement between Ray and the State.

6. Any error in the admission of appellant's custodial statement about his crack cocaine usage the week of the crimes was rendered harmless by the overwhelming evidence of guilt adduced by the State. *Slaton v. State*, 224 Ga. App. 422 (2) (480 SE2d 872) (1997).

7. The trial court's curative instruction to the jury to disregard as irrelevant Ray's statement about a threat appellant made against the prosecutor was sufficient to prevent the testimony from having any prejudicial impact. See generally *Crawford v. State*, 256 Ga. 585 (2) (351 SE2d 199) (1987).

8. Appellant contends his due process rights were violated by the trial court's charge on reasonable doubt. The trial court charged the jury

> A reasonable doubt is not a vague or conjectural doubt. It is not a fanciful doubt. It is not an imaginary doubt. *Neither does it mean a possibility that the defendant may be innocent,* but as the Court has stated to you, it is a doubt that is founded on reason and you have to decide after listening to the evidence when you have reason or — a reason, that is, whenever your doubt is based on reasoning.

Appellant contends the emphasized language of the charge suggested to the jury a "higher degree of doubt than is required for acquittal under the reasonable-doubt standard." *Cage v. Louisiana*, 498 U. S. 39, 41 (111 SC 328, 112 LE2d 339) (1990). We do not agree.

The correct inquiry to determine whether a trial court's instruction on the State's burden of proof allowed a finding of guilt based on a degree of proof below that required by the due process clause is whether there is a "reasonable likelihood" that the jury applied the instruction in a constitutionally impermissible manner. *Estelle v. McGuire*, 502 U. S. 63, 72, n. 4 (112 SC 475, 116 LE2d 385) (1991). The word "possibility" in the trial court's charge would have been understood by the jury to constitute only a synonym of the vague, imaginary and fanciful doubts previously discussed by the trial court. This language is thus distinguishable from the challenged charge in

*Cage,* supra, 498 U. S. at 40, which equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. Therefore, considering the charge as a whole, we find no reasonable likelihood that the jury applied a standard of proof less stringent than that required by the State and Federal due process clauses or other applicable law. See OCGA § 16-1-5.

This charge is not among the suggested pattern jury instructions for criminal cases. When a legal issue involves such well-established principles as the definition of reasonable doubt, there are few, if any, circumstances which would justify a trial court's failure to use the suggested pattern criminal charges compiled by the Council of Superior Court Judges of Georgia. Accordingly, we emphatically disapprove the use of the challenged charge. Although its use here does not require reversal, continued use of the disapproved charge in disregard of this opinion may result in the reversal of future convictions.

Accordingly, we disapprove the language in those cases upholding the giving of this charge. E.g., *Williams v. State,* 210 Ga. 207, 208 (1) (78 SE2d 521) (1953); *Connell v. State,* 153 Ga. 151 (2) (111 SE 545) (1922); *Andrews v. State,* 201 Ga. App. 329 (2) (411 SE2d 52) (1991); *Nebbitt v. State,* 187 Ga. App. 265 (2) (370 SE2d 1) (1988); *Campbell v. State,* 181 Ga. App. 1 (2) (351 SE2d 209) (1986); *Veasley v. State,* 142 Ga. App. 863 (4) (237 SE2d 464) (1977); *Deering v. State,* 123 Ga. App. 223 (3) (180 SE2d 245) (1971).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 1, 1999 —
RECONSIDERATION DENIED DECEMBER 20, 1999.

*Steven E. Phillips,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General,* for appellee.