S01A0592. MANGUM v. THE STATE.
(555 SE2d 451)

THOMPSON, Justice.

A jury convicted Jason Mangum of the felony murder and armed robbery of Jerry Allen Clark and the armed robbery of Martha Jean Hollis.[1] Because we conclude that Mangum was denied his Sixth

---

[1] The crimes took place on September 29, 1993. A true bill of indictment was returned on October 15, 1993, charging Mangum and co-defendants Rebecca Susan Johnson and Wayne Johnson with malice murder, felony murder, and armed robbery (two counts). Trial commenced on January 24, 1995, and on January 30, 1995, a jury found Mangum and both co-defendants guilty of felony murder and two counts of armed robbery. Mangum was sentenced on February 1, 1995 to life imprisonment, plus two concurrent 20-year terms. A motion for new trial was filed on March 2, 1995, and amended on June 26, 2000, July 6, 2000, and July 11, 2000. After an evidentiary hearing, the amended motion for new trial was denied on October 6, 2000. A notice of appeal was filed on October 27, 2000. The case was

Amendment right of confrontation, he is entitled to a new trial.

Rebecca Johnson, an acquaintance of Mangum, had information that the murder victim, Jerry Clark, would be coming to Georgia with a large sum of cash he had acquired from an insurance settlement. Clark and his companion, Martha Jean Hollis, were to be guests at Rebecca's apartment. Rebecca and Mangum made plans to rob Clark when he arrived in Atlanta, and they solicited the help of Rebecca's son, Wayne Johnson. On the day before the plot was to be carried out, Wayne told two friends that he and Mangum were planning to rob a man coming in from out of town.

Clark and Hollis arrived in Atlanta. While the two were alone in Rebecca's apartment, two young males entered. Both intruders wore Halloween-type masks (one wore a werewolf mask), and hooded sweatshirts. They encountered Hollis in the living room where they demanded her jewelry at gunpoint and asked the location of her companion. Hollis directed one of the perpetrators to a bedroom where Clark was resting. The intruder returned to the living room a few minutes later with Clark's money and then asked his accomplice if he should "waste" the couple. At that point, Clark walked into the living room and ordered the two to get out of the apartment. The armed intruder turned toward Clark and fired the fatal shot. Clark died as a result of a single gunshot to the abdomen fired from a .380 pistol.

After the shooting, Mangum disclosed to his teenage girlfriend that he robbed and shot a man and shared the proceeds of the robbery with Rebecca Johnson. It was also established that Mangum owned a werewolf mask and a .380 pistol, the same caliber as the murder weapon. A comparison was made of the shell casing recovered from the crime scene with other shell casings known to have been fired from Mangum's pistol. Based on that information, a firearms examiner testified that the bullet fired at the crime scene had been fired from Mangum's pistol.

1. The evidence was sufficient to enable a rational trier of fact to find Mangum guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). It follows that the court did not err in denying Mangum's motion for directed verdict of acquittal made at the conclusion of the State's case-in-chief, and renewed at the close of the evidence.

2. In a hearing conducted prior to the commencement of voir dire, trial counsel requested that the court order the production and in camera inspection of any juvenile court records which may pertain to certain State's witnesses, to ascertain whether those witnesses

docketed in this Court on January 10, 2001, and oral argument was heard on April 17, 2001.

had pending juvenile adjudications that could be used for impeachment as to bias or prejudice under the authority of *Davis v. Alaska*, 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974).[2] Initially, the prosecution declined to take a position with regard to the motion, but then maintained "that the juvenile records are under no condition to come in." The court denied defendants' request, stating that it would not "make an assessment as to whether or not somebody is on probation or had been on probation and then reveal that to [the defense]." When asked to clarify its ruling as to whether defense counsel would be permitted to cross-examine the witnesses concerning possible pending juvenile offenses, the court replied that it would disallow any inquiry *at all* concerning juvenile offenses.[3]

In large part, the State's case-in-chief consisted of a series of juvenile witnesses, all of whom were acquaintances of Mangum's and could connect him to discussions with the Johnsons concerning the robbery, or could tie him to the murder weapon.[4] Mangum submits that these witnesses had extensive juvenile records and likely pending cases, but that the defense was unable to expose bias or motive on the part of the witnesses based on the theory that they were subject to the criminal justice process at the same time they were assisting the police. With respect to two of those witnesses, the defense was able to elicit limited testimony on cross-examination concerning pending juvenile prosecutions, but only because the witness or the prosecutor opened the door to such inquiry.[5]

---

[2] At the pretrial hearing, counsel for co-defendant Rebecca Johnson informed the court that he had attempted to subpoena the juvenile records of certain witnesses for the State, but that he was denied direct access to those records. Counsel asked the court to order production of any juvenile records and to conduct an in camera inspection to determine whether any witnesses were currently on probation through the juvenile court or have open or pending cases in that court. Mangum's trial counsel joined the motion.

[3] Mangum's counsel argued the necessity for cross-examination as follows:
My point is we think we know some of the problems some of the witnesses have had. And we think we know some of the rulings that the juvenile court has made. And if we ask some of the witnesses, for instance, weren't you involved at a certain point in time in such and such an incident; if they say no, I have no idea what he's talking about. . . . I understand the court has said we cannot have access to those records, but what we were asking was could .we have access to those records to impeach him.

[4] The defense attempted to impeach these witnesses with prior inconsistent statements given to officers during their investigation. When one of these witnesses stated he could not recall a prior statement to police, defense counsel inquired about his use of cocaine. The court immediately sustained an objection by the State and no further inquiry was made concerning criminal conduct on the part of the witness. Another witness testified that Rebecca Johnson had solicited his help in perpetrating the robbery, but that he declined.

[5] One witness volunteered that he was supposed to be in court on the day following the murder. Over objection by the State, the court allowed inquiry into the probationary status of the witness. He disclosed that he was presently on probation in juvenile court for statutory rape and burglary.
A second witness was asked by the State on direct examination where he resided, and

In *Davis v. Alaska,* the Court held that the confrontation clause of the Sixth Amendment requires that a defendant in a state criminal prosecution be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias in favor of the State resulting from the witness' probationary status as a juvenile delinquent, notwithstanding that such impeachment would conflict with the State's asserted interest in preserving the confidentiality of juvenile delinquency proceedings. And in these circumstances, a criminal defendant's rights under the confrontation clause are paramount to the State's policy of protecting juvenile offenders. *Davis v. Alaska,* 415 U. S. at 319.

This Court recognized that *Davis v. Alaska* guarantees a defendant in a criminal trial "both the general right to cross-examine witnesses against him and the more specific right to cross-examine a key state's witness concerning pending criminal charges against the witness." *Hines v. State,* 249 Ga. 257, 259 (2) (290 SE2d 911) (1982). See also *Baynes v. State,* 218 Ga. App. 687 (4) (463 SE2d 144) (1995). Whether or not a "deal" has been made with the State is not crucial. *Hines,* supra.

> What counts is whether the witness may be shading his testimony in an effort to please the prosecution. "A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception." [Cits.]

*Hines,* supra at 260.

In the present case, the defense was thwarted in its attempts to discover information concerning juvenile records of the State's witnesses and to have the court conduct an in camera examination of those records to determine whether they could be used for purposes deemed appropriate in *Davis v. Alaska.* It was confirmed at trial that at least two of those witnesses had juvenile offenses pending at the time. When the court restricted cross-examination based on the confidentiality of juvenile records and disallowed any inquiry into pending criminal charges against the witness in an effort to attack credibility "directed toward revealing possible biases, prejudices, or ulterior motives," *Hines,* supra at 260 (2), the rule in *Davis v. Alaska*

---

he identified a juvenile detention facility. As a result, defense counsel was permitted to cross-examine the witness as to the nature of the juvenile offense. But when the witness was asked whether the prosecutor could have him sent to "a tougher place" if she were displeased with him, the State objected and the court curtailed further questioning along these lines.

was violated.

We cannot agree with the State's assertion that any error in the court's ruling was harmless. A violation of the Sixth Amendment right of confrontation results in "constitutional error of the first magnitude." (Punctuation omitted.) *Davis v. Alaska*, 415 U. S. at 318. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U. S. 18, 24 (87 SC 824, 17 LE2d 705) (1967). The burden rests with the prosecution in making this showing. See *State v. Hightower*, 236 Ga. 58, 61 (222 SE2d 333) (1976) (State must show beyond a reasonable doubt that the error did not contribute to the verdict). "The fact that there was other sufficient evidence to convict does not make the error harmless; rather, the test is whether the evidence may have influenced the jury's verdict." *Jones v. State*, 265 Ga. 84, 86 (4) (453 SE2d 716) (1995).

Mangum's conviction was based largely on circumstantial evidence, or hearsay testimony elicited from the juvenile witnesses. With respect to at least five prosecution witnesses, Mangum was denied the right "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U. S. at 318. The State has not demonstrated that the limitation on Mangum's Sixth Amendment right of confrontation, which pervaded the trial, was harmless beyond a reasonable doubt. Because we conclude that the error may well have influenced the verdict, Mangum is entitled to a new trial. See generally *Starks v. State*, 266 Ga. 547 (468 SE2d 376) (1996).

3. Mangum challenges several aspects of the jury instruction which merit discussion.

(a) Citing *Coleman v. State*, 271 Ga. 800 (8) (523 SE2d 852) (1999), Mangum asserts that an erroneous jury instruction relating to the definition of reasonable doubt violated his state and federal due process rights. Within the pattern instructions on reasonable doubt, the trial court added the gratuitous language, "neither does [reasonable doubt] mean a possibility that the defendant may be innocent." In *Coleman* we considered the identical charge and we overruled a long line of cases which had previously approved the extraneous language.[6] Nonetheless, in considering the charge as a whole, we found no reasonable likelihood that the jury applied a standard of proof less stringent than that required by due process.

---

[6] The charge did not conform to the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2d ed. 1991), compiled by the Council of Superior Court Judges of Georgia.

We also admonished that "continued use of the disapproved charge in disregard of this opinion may result in the reversal of future convictions." Id. at 805 (8).

While we recognize that Mangum's 1995 trial predated *Coleman*, and that the charging error is not likely to recur on retrial, we nevertheless recognize that the problem persists. See *Bernoudy v. State*, 245 Ga. App. 489 (2) (538 SE2d 150) (2000); *Cowan v. State*, 243 Ga. App. 388 (7) (531 SE2d 785) (2000). Thus, we restate our admonition in *Coleman*.

(b) Prior to the commencement of deliberations, the court instructed the jury on the requirements of unanimity, adding: "if you cannot unanimously agree on a verdict, the judge is required by law to declare a mistrial and retry the case before another jury." In *Harris v. State*, 263 Ga. 526, 528 (6) (435 SE2d 669) (1993), we cautioned that "[a]lthough a predeliberation charge on unanimity is proper, informing the jury in such a charge of the consequences of a failure to achieve unanimity is disapproved." Likewise, we hold that the challenged instruction in this case was certainly premature and an inaccurate statement of the law in a circumstance where the State elects not to pursue a retrial following mistrial resulting from a hung jury.

(c) A charge on the law of conspiracy was authorized by the evidence, as was a charge on admissibility of co-conspirators' hearsay declarations. "A conspiracy may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." (Citation and punctuation omitted.) *Washington v. State*, 268 Ga. 598, 601 (6) (492 SE2d 197) (1997). The trial evidence established that Mangum and the Johnsons plotted to perpetrate an armed robbery against the victims; that Mangum and Wayne Johnson acted in furtherance of that plan by entering the residence and robbing both victims at gunpoint; and that Clark was killed during the course of that robbery.

(d) It was not error for the trial court to instruct the jury both on conspiracy and parties to a crime. "[I]t has been repeatedly held that a conspiracy may be proven and a jury charge may be given on conspiracy and parties to a crime even though a defendant is not indicted under those theories." *Huey v. State*, 263 Ga. 840, 842 (3) (439 SE2d 656) (1994).

(e) Nonetheless, we agree with Mangum that the charge on conspiracy was deficient in that the court failed to specify that the jury must be satisfied *beyond a reasonable doubt* of the existence of a conspiracy before considering the hearsay declarations of a coconspirator. See Suggested Pattern Jury Instructions, supra.

4. As our holding in Division 2 requires reversal, and no other error is raised which is likely to recur on retrial, we do not reach those enumerations of error.

*Judgment reversed. All the Justices concur, except Sears, P. J., Hunstein and Carley, JJ., who dissent.*

SEARS, Presiding Justice, dissenting.

Because I disagree with the majority's conclusion that the trial court improperly restricted Mangum's cross-examination of the State's juvenile witnesses concerning whether they had pending juvenile charges against them or were on probation stemming from juvenile charges, I must dissent to the reversal of Mangum's conviction. However, because I conclude that the trial court erred by failing to conduct an in camera review of the witnesses' juvenile records to determine whether they contained material that could be used to impeach the witnesses, I would remand the case to the trial court for it to conduct such an examination.

Contrary to the majority's conclusion, the record does not support the conclusion that the trial court improperly limited the cross-examination of the juvenile witnesses. In a pre-trial hearing, Mangum sought to have the trial court review the juvenile court records of the State's witnesses, and inform Mangum of the witnesses who had juvenile cases pending against them. Although the trial court stated that it would not allow access to juvenile records or questions to a witness about the juvenile records themselves, it stated that it would allow the type of cross-examination permitted in *Davis v. Alaska*.[7] At one point in the hearing, the trial court stated that juvenile court records are confidential and thus not subject to discovery; that *Davis* simply stands for the principle that a defendant has a right to cross-examine a witness; and that in *Davis*, the defense wanted to cross-examine a witness about "the fact that he was on probation in juvenile court — from the juvenile court for burglary when he testified against his client, and that had nothing to do with the integrity of the juvenile court records." At another point, the trial court stated that although the defense could not "go into the juvenile records," the defense could cross-examine the witness about whatever it wanted to, "[t]hat's what was done in the *Davis* case."

On balance, I think that a fair reading of the transcript of the pre-trial hearing shows that the trial court conveyed that it would not permit the discovery or the use of the juvenile records themselves, but that it would allow cross-examination about pending juvenile cases that was consistent with *Davis*. Moreover, this interpretation is consistent with the fact that at trial the trial court allowed defense counsel, over the State's objection, to question two witnesses about their pending juvenile cases. For example, when defense coun-

---

[7] 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974).

sel was questioning one juvenile witness, defense counsel asked the witness if a juvenile case for statutory rape was still pending against the witness. The witness responded that he was "done fighting it," and defense counsel asked the witness if he was on probation, a permissible line of inquiry under *Davis*. The State objected to this line of questioning, but the trial court overruled the objection and let the questioning continue. Similarly, defense counsel asked another state's witness if he was at a juvenile detention center because he had shot somebody. The witness responded that he was, and defense counsel asked whether he knew that if he violated any of the rules of that center, he could be sent to a "tougher place." The witness stated that that was correct. Defense counsel then asked whether, if the prosecutor was angry at you, "she could send you to a different place." The witness responded affirmatively. At that point, the State objected to the question, but defense counsel stated that the question "went to [the witness's] motive and bias" and that it was a matter of the witness's perception. Although the trial court made no specific ruling on the state's objection, after the defense explained its reason for the question, defense counsel was permitted to finish the inquiry.

Because I do not agree with the majority's conclusion that the trial court impermissibly limited the type of cross-examination permitted in *Davis*, and because the majority reverses Mangum's conviction based on its conclusion that "the rule in *Davis v. Alaska* was violated," majority opinion at 576, I must dissent to the reversal.

Nevertheless, I agree with the majority that "the defense was thwarted in its attempts to discover information concerning juvenile records of the State's witnesses and to have the court conduct an in camera examination of those records to determine whether they could be used for purposes deemed appropriate in *Davis v. Alaska*." Majority opinion at 576. In this regard, the record shows that Mangum told the trial court he had issued a subpoena for the production of the juvenile court records of the witnesses in question and that he then moved the trial court to review those records in camera in order to determine if any relevant material, as outlined in *Davis v. Alaska*, was contained within the juvenile records. The trial court refused to review the records in question. Thus, the majority correctly concludes that the trial court's actions did thwart the defense's efforts to determine whether the State's juvenile witnesses had pending cases about which they could be cross-examined.

The present case is similar to *Baynes v. State*.[8] In that case, defense counsel subpoenaed the records of a juvenile witness, and the State sought to quash the subpoena on the ground that juvenile adju-

---

[8] 218 Ga. App. 687, 690-691 (463 SE2d 144) (1995).

dications could not be used to impeach a witness. Defense counsel responded that he had subpoenaed the records in order to use them for purposes consistent with *Davis v. Alaska*. The trial court quashed the subpoena, but the Court of Appeals reversed, ruling that under *Davis*, defense counsel was entitled to attack the witness's credibility with any pending cases or any prior adjudications for which the juvenile was on probation. Because the record did not show whether such relevant juvenile court records existed, the Court of Appeals remanded the case to the trial court for it to determine the status of the juvenile's record. The Court of Appeals ruled that if the trial court determined that the juvenile witness had a pending juvenile case, the trial court should order a new trial, and that if the trial court determined that there was no such pending case, the trial court should enter an order to that effect and the defendant would then have 30 days in which to file an appeal.

In the present case, I conclude that defense counsel acted properly in subpoenaing the juvenile records and in asking the trial court to conduct an in camera review of those records to determine if they contained any relevant information. In this regard, requesting a trial court to review confidential records for relevant trial material is a procedure that has been approved by this Court,[9] the Court of Appeals of Georgia,[10] and the federal courts[11] to determine whether certain records contain information material to the defense. Accordingly, I conclude that the trial court improperly refused to review the juvenile records in question, and that therefore the case should be remanded to the trial court for it to examine the applicable juvenile records.[12]

For the foregoing reasons, I dissent to the majority's reversal of Mangum's conviction on the ground that the trial court improperly limited the type of cross-examination permitted in *Davis v. Alaska*. Instead, I would remand the case to the trial court for it to determine whether the witnesses' juvenile records contained material that would have been relevant to Mangum's trial under *Davis v. Alaska*.

I am authorized to state that Justice Hunstein and Justice Carley join in this dissent.

---

[9] *Pope v. State*, 256 Ga. 195, 212 (22) (345 SE2d 831) (1986); *Stripling v. State*, 261 Ga. 1, 6 (7) (401 SE2d 500) (1991).

[10] *Bartlett v. State*, 196 Ga. App. 174 (1) (396 SE2d 31) (1990); *Sosebee v. State*, 190 Ga. App. 746, 748-749 (380 SE2d 464) (1989).

[11] E.g., *Pennsylvania v. Ritchie*, 480 U. S. 39, 59-60 (107 SC 989, 94 LE2d 40) (1987).

[12] Although Mangum did cross-examine two witnesses about pending juvenile cases, it is possible that the witnesses were not forthcoming about their pending cases, and that a review of the juvenile records would have disclosed that fact. Moreover, in addition to those two witnesses, Mangum also requested that the trial court conduct an in camera review of the records of several other juvenile witnesses.

DECIDED NOVEMBER 19, 2001—
RECONSIDERATION DENIED DECEMBER 14, 2001.

*Bruce S. Harvey, David S. West*, for appellant.
*Paul L. Howard, Jr.*, District Attorney, *George W. K. Snyder, Jr., Bettieanne C. Hart, Elizabeth A. Baker*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Adam M. Hames*, Assistant Attorney General, for appellee.