A05A1501. BUTLER v. THE STATE.
(623 SE2d 132)

PHIPPS, Judge.

Gary Butler was tried by a jury and found guilty of two counts of armed robbery and two counts of aggravated assault. The trial court merged the aggravated assault counts into the armed robbery counts

---

and sentenced Butler to 20 years confinement on each armed robbery count, to run concurrently. On appeal, he claims that the trial court erred by denying his motion to suppress identification evidence, that his trial counsel was ineffective and that the evidence was insufficient for the jury to have found him guilty. For reasons that follow, we affirm.

On August 20, 2003, shortly before 9:50 a.m., two men entered a dry cleaning shop in Riverdale. Prexa Patel was working there. One of the men asked her about dry cleaning prices and the other told her to open the cash register. When she refused, he pulled out a gun. Patel then opened the register and the men took approximately $150 and left. Patel saw the men leave in a white car with a paper license tag.

Officer Ronnie Potts with the Riverdale Police Department responded to a call at the dry cleaners at approximately 9:50 a.m. and spoke to Patel. Patel described the robbers as two black males, one wearing a grey t-shirt and the other wearing a white sleeveless t-shirt. Potts placed a lookout for the car Patel had described and then searched for it himself.

Shortly before 10:30 a.m., two males entered a beauty supply store in Clayton County, pointed a gun at Gyong Jung, an employee, and told her to give them all of the store's money. According to Jung, one of the men was wearing a black t-shirt, black headband and black skullcap and the other was wearing a light brown mask. She described the gun as black and gold. Jung testified that the man with the skullcap told the man with the ski mask to get the money; she then opened the register and they took approximately $200. She ran outside when they left and watched the men drive away in a white car with a temporary tag.

At approximately 10:30 a.m., Officer James Long with the Clayton County Police Department saw Jung running toward his car, screaming that she had just been robbed. She told him that two black males had robbed her and described the car they were driving. Long reported the incident and headed in the direction Jung indicated the robbers had driven. Shortly thereafter, Long saw a white car with two occupants and with a "drive-out" tag, and followed it. The car pulled into a driveway located in a residential subdivision and stopped. When Long saw another officer arrive, he told the men to stay in the car. Long and the other officer then removed both men from the car and arrested them. Long testified that Butler was the driver of the car. A photograph of Butler at the time of his arrest, which was introduced at trial, showed him wearing a white sleeveless t-shirt.

When Potts heard that the white car had been stopped, he brought Patel to the scene and she identified the men as the robbers. Potts testified that the men were in the back seats of separate patrol cars at the time and he assumed they were handcuffed. He estimated

that approximately 45 minutes elapsed between the time he responded to the robbery at the dry cleaners and the time Patel identified the men. Patel testified that Butler was the one who had pulled the gun on her and took the money from the register.

Officer Mark Niedbalski with the Clayton County Police Department assisted Long in investigating the beauty supply store robbery. He interviewed Jung at the store and then took her to where the car had stopped, which was approximately two miles from the store. Jung identified one of the men as the one who had held the gun; however, it was not Butler. At trial, Jung testified that she was not able to identify the other man.

After the men were arrested, Long searched the car and found a large black and gold handgun and approximately $300 in the console between the front seats. He also found a brown ski mask, a black headband and a black stocking cap. Jung identified the gun as the one used in the beauty supply store robbery.

Butler's accomplice, who was 17 years old at the time of the crimes, testified for the state. He said that he had known Butler for about a year and that on August 20, Butler picked him up around 9:00 or 10:00 in the morning. He testified that he and Butler robbed the beauty supply store. He said that Butler supplied him with a ski mask and told him to put it on before pulling a gun on the woman in the store. Butler then told him to take the money from the register, and he complied. They left in a white car, with Butler driving, and the accomplice put the money in the console of the car. He said that Butler was wearing a grey jersey at the time of the robbery and that he took that off in the car after the robbery. The accomplice denied being with Butler at the dry cleaners that day.

1. Butler claims that Patel's showup identification of him was impermissibly suggestive and that the trial court erred by denying his motion to suppress the identification.

At the hearing on Butler's motion to suppress, Patel's testimony was essentially the same as the trial testimony previously described. Patel was shown a photograph of Butler at the time of his arrest, which was taken while Butler stood against a patrol car, and she identified him as the man who had pulled the gun on her and taken the money from the register. At the hearing, Patel also testified that the men were in her store for five minutes.

We use a two-part test to determine the admissibility of pre-trial identifications: (1) Was the procedure used impermissibly suggestive? and (2) If so, was there a substantial likelihood of irreparable misidentification?[1]

---

[1] *Salazar v. State*, 245 Ga. App. 878 (1) (539 SE2d 231) (2000).

To evaluate that likelihood, we apply the test enunciated in *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) [(1972)] which requires that we consider the witnesses' opportunity to view the suspect at the time of the offense, the witnesses' degree of attention, the accuracy of the witnesses' prior description and their level of certainty.[2]

Although the trial court concluded that the procedure used was not unduly suggestive, "a one-on-one showup is inherently suggestive."[3] However, there are countervailing considerations that may render the one-on-one confrontation permissible.[4] Those include the need for a speedy police investigation and the need "to resolve promptly any doubts as to identification so as to enhance the accuracy and reliability of the identification, thus expediting the release of innocent subjects."[5]

Butler complains that the identification was unfair because it took place while he was handcuffed in a police car. Butler relies on *Towns v. State*[6] to support his claim. We find *Towns* distinguishable. The victim in *Towns* saw his assailant for at most one to two seconds as he ran toward him at night from an unlit garage. The victim went to the police station the next day and identified a suspect who was lying on a cot in a jail cell. Here, Patel had a much better and longer opportunity to see the person who robbed her at gunpoint. In addition, Patel identified Butler less than an hour after the robbery, not the next day like the victim in *Towns*.

The fact that Butler was in a police car when he was identified does not alone render the identification inadmissible.[7] But even if all the circumstances surrounding the identification rendered the showup impermissibly suggestive, the evidence is inadmissible only if under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification.[8]

Applying the factors from *Neil v. Biggers*, we find that Patel had ample opportunity to see Butler for the five minutes he was in her store, during which time he pointed a gun at her and took money from the register. The robbery took place during daylight hours and Butler was not wearing a mask. There was no evidence that Patel's attention was focused on anything other than the robbery as it was occurring.

---

[2] *Baynes v. State*, 218 Ga. App. 687, 688 (1) (463 SE2d 144) (1995).

[3] *Salazar*, supra at 879.

[4] *Baynes*, supra.

[5] Id.

[6] 136 Ga. App. 467 (221 SE2d 631) (1975).

[7] *Salazar*, supra at 879.

[8] *Miller v. State*, 266 Ga. App. 378, 383 (1) (597 SE2d 475) (2004).

She continued to focus on Butler as he retreated to his car. Patel's descriptions of Butler and the car he was driving were general, but proved to be accurate. Finally, Patel positively identified Butler within approximately 45 minutes of the robbery.

Under the totality of the circumstances presented in this case, we find no substantial likelihood of irreparable misidentification. The trial court did not err in denying Butler's motion to suppress the identification.[9]

2. Butler claims that his trial counsel was ineffective because he failed to introduce fingerprint evidence found at the dry cleaners.

At trial, the district attorney informed the court and Butler's counsel that he had recently obtained a fingerprint report showing that Butler's fingerprints were not found on the cash register. Butler's trial counsel said that he did not intend to introduce the report. At the motion for new trial hearing, Butler's trial counsel said that he could not remember why he did not use the fingerprint evidence.

> A defendant claiming ineffective assistance of counsel must show (1) that his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.[10]

We are not required to address both components of the test if the defendant has made an insufficient showing on one.[11] Even if we were to assume that trial counsel's failure to introduce the fingerprint evidence was objectively unreasonable, Butler has failed to make the required showing that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable."[12] Patel testified that she opened the register and that the man she identified as Butler took the money. Considering the evidence pointing to Butler as one of the robbers of the dry cleaners and the lack of evidence that Butler actually touched the register during the robbery, we conclude that Butler has not demonstrated a reasonable probability that the result of the trial would have been different if his trial counsel had introduced evidence showing that his fingerprints were not on the cash register.

---

[9] See *Salazar*, supra at 879-880; see also *Hooper v. State*, 251 Ga. App. 533, 536-537 (2) (554 SE2d 750) (2001).

[10] *Parrish v. State*, 237 Ga. App. 274, 283 (10) (514 SE2d 458) (1999) (citation omitted).

[11] *Simmons v. State*, 262 Ga. App. 164, 167 (1) (d) (585 SE2d 93) (2003).

[12] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

3. Butler claims that the evidence was insufficient to support his convictions.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict and the appellant no longer enjoys a presumption of innocence.[13] As an appellate court, we do not weigh evidence or determine witness credibility.[14]

A person commits the offense of armed robbery when, with the intent to commit theft, he takes property from the person of another or the immediate presence of another by use of an offensive weapon or any replica, article or device having the appearance of an offensive weapon.[15]

(a) With respect to the armed robbery of Patel, Butler argues that her pre-trial identification of him was tainted and should not have been admitted and points out that Patel did not identify him at trial.

As set forth in Division 1, Patel's pre-trial identification of Butler was admissible. Patel was not asked to identify Butler at trial. Assuming that Patel was unable to positively identify Butler at trial, that inability goes to the weight of the evidence and the credibility of the witness, which are questions for the jury to decide.[16]

Based on the testimony of Patel, Potts and Long and the physical evidence presented at trial, we conclude that the evidence was sufficient for the jury to have found Butler guilty beyond a reasonable doubt of the armed robbery of Patel.[17]

(b) With respect to the armed robbery of Jung, Butler points out that Jung never identified him. He claims that at most the evidence showed he was merely present when the perpetrator of the beauty supply store robbery was arrested and that was not sufficient to support his conviction.

Although Jung did not identify Butler, she did identify the gun found in the car he was driving shortly after the beauty supply store robbery. Jung also accurately described the car Butler was driving, which was stopped two miles from the beauty supply store. In addition, the mask, cap and headband found in the car Butler was driving were very similar to what she described the robbers had worn. Jung's testimony corroborated in part the testimony of Butler's alleged accomplice, who testified that he wore a ski mask during the commission of the robbery, that he took the money from the register at Butler's direction and that he and Butler left the beauty supply store in a white car. The accomplice also testified that he put the

---

[13] *Moore v. State*, 274 Ga. App. 432 (618 SE2d 122) (2005).

[14] Id.

[15] OCGA § 16-8-41 (a).

[16] *Johnson v. State*, 176 Ga. App. 378, 380 (4) (336 SE2d 257) (1985).

[17] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

money from the robbery in the console of the car Butler was driving. That testimony was corroborated in part by Long's testimony that he found approximately $300 in the console when Butler was arrested.

We conclude that the evidence was sufficient for the jury to have found Butler guilty beyond a reasonable doubt of the armed robbery of Jung.[18]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 1, 2005.

*Stanley W. Schoolcraft III, for appellant.*
*Jewel C. Scott, District Attorney, Erman J. Tanjuatco, Assistant District Attorney, for appellee.*