## A09A0954. HIBBS v. THE STATE.
### (683 SE2d 329)

MIKELL, Judge.

Following a jury trial in October 2005, Donald Carl Hibbs was found guilty and convicted of three counts of aggravated child molestation. He was sentenced to 15 years in confinement on each count, to run concurrently. His motion for new trial was denied, and he appeals the judgment against him, contending that the scope of his cross-examination of the victim at trial was improperly restricted. Because we conclude that Hibbs was denied his Sixth Amendment right of confrontation and that the error was not harmless beyond a reasonable doubt, we reverse.

Viewing the evidence in the light most favorable to the verdict, as we must on appeal from a criminal conviction,[1] the record reflects that the victim, B. D., who was 14 years old at trial, testified that Hibbs forced him by threats to engage in oral sex and anal sex on multiple occasions and in various locations. At the time these events occurred, in the summer of 2002, B. D. was 11 years old and Hibbs was 15. B. D. further testified that "[f]ive or six months" later, he told his stepmother, his father, and his mother of these events. B. D.'s father and mother testified at trial as to his outcry statements to them.[2] B. D.'s father did not inform the police, because he did not want B. D. to "go though [sic] any more stuff." B. D.'s mother testified that she called the police "[e]ventually," in October 2002, but that B. D. was not interviewed at that time.

---

[31] See *Howell*, supra at 177-178 (1).

[1] See *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004).

[2] See OCGA § 24-3-16 (Child Hearsay Statute); *Woodard v. State*, 269 Ga. 317, 318 (1) (496 SE2d 896) (1998).

On May 27, 2004, almost two years after the abuse occurred, B. D. was interviewed by Chad Smith, Assistant Chief of the Cornelia Police Department. B. D. was then in custody on a pending charge of juvenile delinquency. The interview took place at the Powerhouse for Kids, a child advocacy center in Toccoa. Smith testified at trial that during the interview, B. D. described how Hibbs, using threats of violence, had repeatedly molested him by both oral and anal sexual contact. The interview was videotaped, and the videotape was introduced into evidence and published to the jury. Also testifying at trial was the doctor associated with the Powerhouse for Kids, who examined B. D. in connection with the charges of sexual abuse.

1. The evidence adduced at trial was sufficient, under the standard set forth in *Jackson v. Virginia*,[3] for a rational trier of fact to have found Hibbs guilty beyond a reasonable doubt for the crimes of which he was convicted.[4]

2. Before trial, the state made a motion in limine that Hibbs not be allowed to cross-examine B. D., with regard to his juvenile status at the time he was interviewed by the police in May 2004. After reviewing B. D.'s juvenile records in camera, the trial court granted the state's motion. In his sole enumeration of error, Hibbs asserts that his Sixth Amendment right to confrontation was infringed when he was not allowed to cross-examine B. D. as to whether juvenile charges were pending against him and whether he was in juvenile custody when he gave his interview to police in May 2004.[5] This enumeration has merit.

The confrontation clause of the Sixth Amendment grants criminal defendants the right to impeach the prosecution's witnesses by cross-examining them with regard to whether they are currently on probation for a juvenile offense or have an open or pending case in juvenile court,[6] or whether they are currently committed to the custody of the Department of Juvenile Justice.[7] The right of a defendant to cross-examine a state witness to show that the witness slanted his testimony in favor of the state in order to obtain more favorable treatment overcomes the state's interest in maintaining

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] See *Ferrell v. State*, 256 Ga. App. 692, 694 (1) (569 SE2d 899) (2002).

[5] We note that neither at trial nor on appeal has Hibbs sought to introduce evidence as to the substantive facts underlying the juvenile charges against B. D., and we express no opinion as to this issue. See *Wright v. State*, 279 Ga. 498, 499 (2) (b) (614 SE2d 56) (2005) (even where defendant may cross-examine state's witness as to hope of benefit related to a pending case, "the substantive facts underlying an open juvenile case would not generally be admissible") (footnote omitted).

[6] *Mangum v. State*, 274 Ga. 573, 576 (2) (555 SE2d 451) (2001), applying *Davis v. Alaska*, 415 U. S. 308, 319 (3) (94 SC 1105, 39 LE2d 347) (1974).

[7] *Wright*, supra, 279 Ga. at 500 (2) (c).

the confidentiality of juvenile court proceedings.[8] This right to cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation."[9]

The state points out that B. D. was released from juvenile custody on June 4, 2004, and the charges against him were dismissed by the juvenile court on February 21, 2005. Thus, by the time Hibbs's trial took place in October 2005, B. D. was no longer in juvenile custody, and the charges against him had been dismissed for more than seven months. The fact remains, however, that B. D. was in juvenile custody, with charges pending against him, at the time he was interviewed by law enforcement authorities in May 2004; and that the accusations he made against Hibbs at that interview were presented to the jury through the testimony of Assistant Chief Smith and through the videotape of the interview itself. Although Hibbs's counsel cross-examined B. D. as to discrepancies between his trial testimony, his interview with Smith, and the written statement he gave Smith after the interview, counsel was not permitted to delve into the fact that B. D. was in juvenile custody when he made the accusations in the interview with Smith.

In *Hines v. State*,[10] the Supreme Court ruled that the trial court erred in refusing to permit the defendant to cross-examine the state's witness as to burglary charges against him that were pending at the time of trial.[11] In the case at bar, on the other hand, no charges in juvenile court were pending against B. D. when Hibbs was tried. Nonetheless, we conclude that the reasoning used in *Hines* applies to the case before us. The Sixth Amendment right to confrontation requires that Hibbs be permitted to cross-examine B. D. as to juvenile charges that were pending at the time of his interview with police, even though they were no longer pending at the time of trial. Such cross-examination must be permitted because Hibbs is "entitled to a reasonable cross-examination on the relevant issue of whether the witness entertained any belief of personal benefit"[12] from testifying against Hibbs in the course of the police interview in May 2004.[13]

---

[8] *Davis v. Alaska*, supra. Accord *Mangum*, supra.

[9] (Citation and punctuation omitted.) *Hines v. State*, 249 Ga. 257, 259 (2) (290 SE2d 911) (1982). Accord *Kennebrew v. State*, 267 Ga. 400, 403 (3) (480 SE2d 1) (1996); *Johnson v. State*, 244 Ga. App. 128, 131 (1) (534 SE2d 480) (2000).

[10] Supra.

[11] Id. at 258, 260 (2).

[12] (Citations omitted.) *State v. Vogleson*, 275 Ga. 637, 639 (1) (571 SE2d 752) (2002) (defendant could cross-examine witness as to the witness's understanding of the reduction in sentence witness received in exchange for his testimony against defendant) (id. at 638).

[13] That Hibbs may have hoped for personal benefit is revealed in the juvenile records. In

The state's reliance on *Sapp v. State*[14] and *Wright v. State*[15] is misplaced. In *Sapp*, shortly after a fatal shooting occurred, the state's witness gave a sworn statement to police identifying Sapp as the shooter.[16] Months later, the witness was arrested on drug possession charges, but these charges were dead-docketed before Sapp's indictment for the shooting.[17] Even though dead-docketed charges could theoretically be revived, the trial court did not abuse its discretion in prohibiting the defendant from cross-examining this witness as to these charges, in the absence of evidence of any deal or potential deal between the witness and the state in exchange for his testimony against Sapp.[18] The Court noted the significance of the timing of the charges against the state's witness: "Indeed, the fact that [the witness] gave his statement implicating Sapp to police *prior to* the existence of any drug charges against [the witness] rebuts the notion that his testimony was somehow shaded by a deal" related to these not-yet-existent drug charges.[19] In contrast, in the case at bar, the charges against B. D. were pending precisely when he made the accusations against Hibbs in the interview. Thus, the "notion" that B. D.'s testimony at the interview may have been shaded by a deal or a hope of benefit has not been rebutted.

Similarly, in *Wright*, the trial court did not err in refusing to allow the defendant to impeach the state's witness by showing that the witness had earlier been indicted for aggravated assault, a felony, and had later pled guilty to reckless conduct, a lesser included misdemeanor.[20] Such "impermissible character evidence"[21] is not allowed because "a defendant cannot cross-examine a witness about a charge which is no longer pending, unless, of course, the charge culminated in a conviction for a felony or a crime of moral turpi-

---

February 2005, the juvenile court charges against B. D. were dismissed on the following grounds: "Youth has been very cooperative with law enforcement in this case. Law enforcement has agreed that charges should be dropped against [B. D.] in the understanding that charges have been filed against another individual involved in this matter. [B. D.] is now living out of county with his father and is doing well." The first two reasons given could indicate that B. D. cooperated with the state in hopes of favorable treatment, and that this cooperation took the form of the charges he made against Hibbs in the May 2004 interview.

[14] 263 Ga. App. 122 (587 SE2d 267) (2003).

[15] 266 Ga. 887 (471 SE2d 883) (1996).

[16] *Sapp*, supra.

[17] Id.

[18] Id. at 123-124.

[19] (Citation omitted; emphasis supplied.) Id. at 124. See also *Mulkey v. State*, 250 Ga. 444, 445 (2) (298 SE2d 487) (1983) (no error to restrict cross-examination of witness as to witness's cooperation in other cases, where no evidence of deal between witness and state in exchange for witness's testimony in defendant's case).

[20] *Wright*, supra, 266 Ga. at 888 (2).

[21] (Citation omitted.) Id. at 889 (2).

tude."[22] But in the case at bar, Hibbs did not seek to introduce the juvenile charges against B. D. in order to show that his testimony was not credible because of his bad character — "a *general* attack on the credibility of the witness."[23] Instead, Hibbs attempted to make a "more particular attack" on credibility, as described in *Davis v. Alaska*,[24] by showing B. D.'s bias due to his expectation of favorable treatment.

"[T]he right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination."[25] Such improper restrictions were exactly what occurred here. Hibbs does not argue that his Sixth Amendment rights were infringed merely because he was denied access to B. D.'s juvenile records;[26] he challenges the restrictions placed on the scope of cross-examination at trial. The trial court abused its discretion in so restricting cross-examination.[27]

3. We proceed to determine whether the violation of Hibbs's Sixth Amendment right to confrontation was harmless beyond a reasonable doubt.[28] The state bears the burden of making this showing,[29] but in the case at bar, the state argued that no error occurred; it did not contend that the error was harmless. The state's case against Hibbs rested primarily upon the testimony of B. D. and of the outcry witnesses to whom he had spoken, as well as the testimony of Smith and the videotaped interview he conducted with B. D. The evidence of the medical examination was not conclusive. Because B. D.'s credibility was at the heart of the case, we conclude that Hibbs's inability to cross-examine B. D. concerning the juvenile charges may have influenced the verdict. Thus, we cannot say that the error was harmless beyond a reasonable doubt.[30]

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JULY 6, 2009 —
RECONSIDERATION DENIED AUGUST 18, 2009 —

---

[22] (Citation omitted.) *George v. State*, 276 Ga. 564, 565 (4) (580 SE2d 238) (2003), citing *Wright*, supra, 266 Ga. at 888 (2).

[23] (Emphasis supplied.) *Davis v. Alaska*, supra at 316 (2).

[24] Id.

[25] (Citations omitted; emphasis in original.) *Pennsylvania v. Ritchie*, 480 U. S. 39, 52 (III) (A) (107 SC 989, 94 LE2d 40) (1987).

[26] Compare id. at 51, 54 (III) (A) (where defendant's cross-examination of state's witness was not circumscribed at trial, no violation of Sixth Amendment rights occurred, even though defendant was not given access to child protective agency records).

[27] See *Hines*, supra at 260 (2).

[28] See *Mangum*, supra at 577 (2); *Wright*, supra, 279 Ga. at 500 (3).

[29] *Wright*, supra, 279 Ga. at 500 (3).

[30] Id.

*Drew W. Powell*, for appellant.

*Brian M. Rickman, District Attorney, Earnest J. McCollum, James E. Staples, Jr., Assistant District Attorneys*, for appellee.