## S97A0598. BERRY v. THE STATE.
(490 SE2d 389)

THOMPSON, Justice.

Rondelrick Berry was convicted of malice murder in the shooting death of Craig Glover.[1] On appeal, Berry challenges the sufficiency of the evidence, and asserts that the trial court abused its discretion in denying his gender-based challenges to the jury selection process and in allowing the testimony of a State's witness whose name did not appear on the list of witnesses provided to the defense. Finding no error, we affirm.

1. Berry contends there was no credible evidence to support the verdict because two of the State's witnesses, Michael Clark and William Lowe, who initially identified Berry as the perpetrator, recanted their testimony at trial.

Craig Glover was shot and killed while sitting in the driver's seat of his car, as a result of two gunshot wounds to the abdomen fired from a .9 millimeter pistol.

Prior to trial, eyewitness Michael Clark was interviewed by investigating officers and his six-page statement was transcribed. Clark reviewed and signed the document, attesting to its truthfulness and voluntariness. In that statement, Clark told police that he observed Glover alone in a blue car on Daniel Street at midnight. Berry approached Glover's car, and after a brief exchange, Glover declined Berry's offer to sell drugs, stating, "every time I come up this street I don't have to buy dope." Berry accused Glover of "trying to get smart" with him, and then Berry reached into some nearby bushes, withdrew a .9 millimeter pistol, and fired three or four shots from

---

[1] The crime occurred May 20, 1993. Berry was indicted on November 5, 1993, and charged with malice murder, felony murder, and aggravated assault. Trial commenced on June 6, 1995, and on June 13, 1995, Berry was convicted of all offenses. He was sentenced on that day to life imprisonment for malice murder. The felony murder and aggravated assault convictions were later vacated. A motion for new trial was filed on July 10, 1995, and amended on August 21, 1996. Although the court signed an order denying the motion for new trial on August 23, 1996, it was not filed with the clerk until September 26, 1996. A notice of appeal was filed on September 20, 1996. The case was docketed in this Court on January 8, 1997, and submitted for decision on briefs on April 23, 1997.

close range into the driver's side window of Glover's car. Berry ran past Clark, retrieved a packet of drugs from the bushes, and left the scene. Clark told the officers that two of Berry's friends also witnessed the shooting and they called out to Berry, "why did you shoot that man — stop before you kill him." Clark recognized the murder weapon as belonging to Berry. When subpoenaed for trial, Clark advised an agent of the prosecution that everything he had to say was contained in the statement given to police.

At trial, Clark testified that he had fabricated the entire statement. He did admit, however, that gunshots had been fired at him after he gave his statement to police and that he was afraid to be involved in the case. Clark's fears were confirmed by a police officer who testified that Clark informed him prior to trial that he had been shot at and that he feared retaliation for his testimony.

A second eyewitness, William Lowe, had also given a signed statement to police unequivocally identifying Berry as the shooter. He later testified at a hearing in juvenile court where he again identified Berry as the perpetrator. At trial, Lowe described the events leading up to the shooting in a manner consistent with his prior statements, but when asked to identify the perpetrator, he responded, "I'm not sure who he was." This testimony was rebutted by another officer, who likewise stated that Lowe had recanted due to fear of retaliation.

"[A] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes." *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982). See also *Brown v. State*, 175 Ga. App. 246 (1) (333 SE2d 124) (1985). Thus, the investigative statements given by Clark and Lowe constituted substantive evidence of Berry's guilt by two eyewitnesses, despite their subsequent recantation or equivocation. *Watkins v. State*, 183 Ga. App. 778 (1) (360 SE2d 47) (1987). It is within the province of the jury to resolve conflicts in trial testimony and assess the credibility of the witnesses. *Willis v. State*, 263 Ga. 597, 598 (436 SE2d 204) (1993). The jury, which was properly instructed on impeachment and credibility of witnesses, chose to believe the witnesses' pre-trial statements and to reject their testimony at trial. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979), to enable a rational trier of fact to find Berry guilty beyond a reasonable doubt of malice murder.

2. Berry asserts that the prosecution improperly exercised five peremptory strikes against male members of the jury pool. See *J. E. B. v. Alabama*, 511 U. S. 127 (114 SC 1419, 128 LE2d 89) (1994) (extending the ruling in *Batson v. Kentucky*, 476 U. S. 79 (106 SC

1712, 90 LE2d 69) (1986), to peremptory strikes exercised solely on the basis of gender); *Tedder v. State*, 265 Ga. 900 (2) (463 SE2d 697) (1995). "[A]ny claim under *Batson* should be raised prior to the time the jurors selected to try the case are sworn." *State v. Sparks*, 257 Ga. 97, 98 (355 SE2d 658) (1987). This is to "allow the trial court to determine if there has been a violation of the defendant's constitutional rights in the jury selection process and, if so, to remedy that violation before the jurors are sworn." *Greene v. State*, 260 Ga. 472, 473 (1) (396 SE2d 901) (1990). The trial court recognized that the challenge, made after the jury was sworn and had exited the courtroom, was untimely. Nevertheless, out of caution, the court required the prosecution to state its reasons for the exclusion of the five male jurors.

The first juror was struck because the prosecution believed he may have too closely identified with the defendant — he had four children in the same age category as the defendant and did volunteer work with young men who were also of the same age. Three jurors emphatically stated that they did not want to be involved in the case — two had difficulty with the fact that it was a murder prosecution and the other stated he had moral and religious convictions which prevented him from sitting in judgment of others and impaired his ability to deliberate with other jurors. The fifth juror stated that he had doubts about whether he could overcome his negative feelings concerning cocaine and cocaine users, and his demeanor indicated that he was agitated about the length of the jury selection process. Each strike was sufficiently explained on a basis which was "gender-neutral, reasonably specific, and related to the case." *Tedder*, supra at 901. The trial court did not abuse its discretion in denying the motion, both on the basis that it was untimely, *Greene*, supra, and because the State offered sufficient reasons under *Tedder*, supra, for the exercise of its peremptory strikes.

3. Berry next contends that the trial court erred in allowing Karl Cal to testify for the State, because Cal's name did not appear on the State's list of witnesses, and insufficient notice was given to the defense. On the third day of trial, the prosecution announced to the court that despite efforts to locate Cal since the inception of the investigation, he had just been found by police. Permission was requested to allow Cal to testify as a newly discovered witness. Defense counsel moved for a mistrial, or alternatively asked for a recess of 30 days. The trial court denied the motion and allowed the defense two hours and fifteen minutes to interview the witness. Cal testified that he was in the area and that he ran to the scene after shots were fired, but that he did not witness the shooting.

As applicable to this prosecution, former OCGA § 17-7-110 prevented an unlisted witness from testifying at trial without the defendant's consent, unless the evidence sought to be presented is

newly discovered evidence which the State was not aware of at the time it furnished the witness list to the defendant.[2] Because the State had been unable to locate Cal until the day he testified and had no knowledge of what evidence he might offer, the "newly discovered" requirement of OCGA § 17-7-110 was satisfied. *Ferrell v. State*, 149 Ga. App. 405 (6) (254 SE2d 404) (1979). See generally *State v. McBride*, 258 Ga. 321 (368 SE2d 758) (1988).

Additionally, the prosecution's failure to list a witness may be remedied by allowing the defense to interview the witness before the testimony is given. *Thrasher v. State*, 265 Ga. 401 (3) (456 SE2d 578) (1995). Since the defense was adequately afforded such an opportunity, the trial court did not abuse its discretion in allowing Cal to testify. Id.; *White v. State*, 253 Ga. 106 (3) (317 SE2d 196) (1984).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 6, 1997.

*Michael R. Hauptman, Alterman & Associates, Cathy M. Alterman,* for appellant.

*Paul L. Howard, District Attorney, Carl P. Greenberg, Assistant District Attorney, Thurbert E. Baker, Attorney General, Deborah L. Gale, Assistant Attorney General,* for appellee.

---

[2] Ga. L. 1994, p. 1895, § 1, amended Title 17 of the Code and enacted a new Chapter 16 to provide for the comprehensive regulation of discovery and inspection in criminal cases. See also 11 Ga. St. U. L. Rev. 137 (1994). The Act, which repealed OCGA § 17-7-110 (Ga. L. 1994, p. 1896), became effective on January 1, 1995, and applies to all cases docketed on or after that date. Since the present case was docketed prior to January 1, 1995, pre-1995 discovery rules, including OCGA § 17-7-110, apply.