S99A0491. LANEY v. THE STATE.
(515 SE2d 610)

THOMPSON, Justice.

Rico Vancolenya Laney was convicted by a jury of malice murder, two counts of felony murder, aggravated assault and unlawful possession of a sawed-off shotgun. The felony murder and aggravated assault convictions were vacated, and sentence was imposed on the malice murder and firearm counts. This appeal followed the denial of Laney's motion for new trial.[1]

Viewing the evidence in a light to uphold the verdict, we find the

---

[8] See *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

[1] The victim was killed on October 13, 1994. The grand jury indicted Laney and charged him with malice murder, two counts of felony murder (one count predicated on aggravated assault, the other on unlawful possession of a sawed-off shotgun), aggravated assault and unlawful possession of a sawed-off shotgun. Laney was tried before a jury beginning April 21, 1997, and the jury returned its verdict of guilty on all counts on April 28, 1997. The next day, the trial court sentenced Laney to life imprisonment for malice murder and five years for the firearm conviction. Laney's timely filed motion for a new trial was denied on October 1, 1998, and Laney filed a notice of appeal on October 23, 1998. The appeal was docketed in this Court on December 29, 1998, and orally argued on March 8, 1999.

following: Laney moved into the apartment of the victim in September 1994. They were heard to argue on different occasions. Laney did not refer to the victim by name, but called her "bitch." A few days before the victim was killed, Laney threatened the victim, shouting, "Bitch, if you don't have my money, I'm going to kill you."

Laney shot the victim in her bedroom with a sawed-off shotgun at close range. The victim died of her wounds.

Laney admitted that he shot the victim, but claimed it was accidental. In this regard, Laney stated that he was attempting to remove a shell from the gun when the victim entered the room; and that she startled him, causing the gun to fire. However, a firearm's expert determined that it would not fire unless 7.5 pounds of pressure were applied to the trigger. The expert added that the gun did not accidentally discharge when she performed a "drop test." Moreover, although he testified to the contrary, Laney's former cellmate told the authorities before trial that Laney admitted he intentionally shot the victim.

1. The evidence was sufficient to enable any rational trier of fact to find Laney guilty beyond a reasonable doubt of malice murder and unlawful possession of a sawed-off shotgun. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Jordan v. State*, 267 Ga. 442 (480 SE2d 18) (1997).

2. Laney asserts the trial court erred in denying his general and special demurrer to counts two (felony murder predicated on the underlying felony of possession of a sawed-off shotgun) and five (possession of a sawed-off shotgun) of the indictment. More specifically, Laney asserts that the possession of a firearm charge cannot serve as a legal predicate for felony murder because it is not a felony that is dangerous per se. See *Ford v. State*, 262 Ga. 602, 603-604 (423 SE2d 255) (1992). However, since the trial court vacated the felony murder convictions, this argument is moot. See *Spencer v. State*, 268 Ga. 85, 87 (4) (485 SE2d 477) (1997).

3. Following the selection of jurors, the trial court asked counsel: "Is this your jury?" When counsel replied that it was, the jurors were sworn and, after the court made some preliminary remarks, it dismissed the jurors for the evening. At that point, defense counsel raised a *Batson* challenge. The court denied the challenge as untimely. We find no error. See *Berry v. State*, 268 Ga. 437, 439 (490 SE2d 389) (1997) (*Batson* challenge is untimely when made after jury was sworn and exited the courtroom); *State v. Sparks*, 257 Ga. 97, 98 (355 SE2d 658) (1987) (*Batson* challenge should be made before jury is sworn). Besides, after the denial of his *Batson* motion, Laney made no effort to preserve the basis of his *Batson* claim on the record. See *Aldridge v. State*, 258 Ga. 75, 77 (365 SE2d 111) (1988)

(defendant has burden to complete record with *Batson* type information).

4. The state was not required to give Laney ten days notice of its intent to present evidence of prior difficulties between Laney and the victim. Prior difficulties are not subject to the notice requirement of USCR 31. *Wall v. State*, 269 Ga. 506 (500 SE2d 904) (1998). The mere fact that *Wall* had not been decided at the time of trial is of no consequence. See *Smith v. State*, 270 Ga. 123, 124 (2) (508 SE2d 173) (1998) (applying *Wall* retroactively).

5. In the absence of a request, it cannot be said that the trial court erred in failing to give contemporaneous instructions with regard to the state's evidence of prior difficulties. See *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998). Nor can it be said that the court commented on the evidence by omitting the word "alleged" from the portion of its charge dealing with prior difficulties. The court made it clear that whether the evidence illustrated prior difficulties between Laney and the victim was a matter for the jury to determine.

6. In her opening statement, the prosecutor said: "This case is pretty sad, and I'm sorry, my husband died the same day and I'm just. . . ." At that point, Laney interposed an objection and the prosecutor apologized. Thereupon, Laney moved for a mistrial, and the court instructed the jury to disregard any personal statements made by the lawyers. Then Laney asked the court to instruct the jury as to "sympathy invoked by either side." The court replied, "We'll talk about that," but took no further action.

Laney asserts the trial court erred in failing to instruct the jury that it should not be moved by sympathy and in failing to rebuke the prosecutor in the presence of the jury. However, Laney did not preserve these matters for review because he did not insist that the trial court give further instructions, or take other action. *Schirato v. State*, 260 Ga. 170, 172 (5) (391 SE2d 116) (1990). See also *Woodham v. State*, 263 Ga. 580 (1) (439 SE2d 471) (1993).

7. The trial court did not err in permitting the prosecutor to use the word "murder" instead of "homicide." The prosecutor's use of the word "murder" did not constitute prosecutorial misconduct.

8. On the fifth day of trial, Laney notified the state of his intent to call Lue Jordan as a witness. Jordan's testimony was to serve two functions: rebut the testimony of two prosecution witnesses that Laney threatened the victim; and show that the witnesses' general reputation for truthfulness was bad. The state did not object to Jordan's rebuttal testimony; but it did object to the testimony concerning the witnesses' reputation for veracity on the ground that Laney

did not comply with OCGA § 17-16-8 (a).[2] The trial court sustained the objection even though it concluded that defense counsel did not act in bad faith in failing to furnish the name of the witness earlier. Laney asserts the trial court erred in refusing to permit Jordan to testify about the prosecution witnesses' reputation for truthfulness.

Even if it can be said the trial court erred by excluding evidence concerning the reputation of the prosecution's witnesses, see *Berry v. State*, 268 Ga. 437, 440, supra (interview is remedy for failure to comply with disclosure of witness), the error was harmless. After all, Laney was permitted to present testimony which rebutted the testimony of the two witnesses. Moreover, the evidence of Laney's guilt was overwhelming. Thus, it is highly probable that the exclusion of the proffered evidence did not contribute to the jury's verdict. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). See also *Hodges v. State*, 265 Ga. 870, 874 (463 SE2d 16) (1995).

9. During closing argument, the prosecutor used a five-pound bag of sugar to illustrate how much pressure it took to pull the trigger of the shotgun which Laney used to kill the victim. Over Laney's objection, the trial court allowed the prosecutor to argue:

> This is a five pound bag of sugar. This is what you have to do, you have to be able to lift this with one finger. That's what you're doing. You're putting 7.5 pounds of pressure to pull that trigger. . . . Can you do it accidentally? Can the gun just go off? Think about it. 7.5 pounds of pressure it took to pull that trigger.

Relying upon *Williams v. State*, 254 Ga. 508, 511 (3) (330 SE2d 353) (1985), Laney asserts the prosecutor's use of the bag of sugar was improper because it was tantamount to the introduction of new evidence during closing argument. We disagree.

In *Williams*, the defendant testified that he shot the victim because the victim drew his pistol and shot at him first. In this regard, the defendant claimed that the victim's shot missed him because the 20-pound trigger pull of the victim's pistol forced the victim to jerk the pistol as he fired. In closing argument, the prosecutor

---

[2] OCGA § 17-16-8 (a) provides:
The prosecuting attorney, not later than ten days before trial, and the defendant's attorney, within ten days after compliance by the prosecuting attorney but no later than five days prior to trial, or as otherwise ordered by the court, shall furnish to the opposing counsel as an officer of the court, in confidence, the names, current locations, dates of birth, and telephone numbers of that party's witnesses, unless for good cause the judge allows an exception to this requirement, in which event the counsel shall be afforded an opportunity to interview such witnesses prior to the witnesses being called to testify.

argued that heavy trigger pull could not have caused the victim's shot to miss the defendant. To illustrate his point, the prosecutor asked an assistant district attorney who weighed around 100 pounds to pull the trigger. The defendant claimed that the prosecutor's experiment constituted new evidence, and that that evidence should not have been introduced during closing argument. This Court agreed, holding:

> The prosecutor's actions introduced new evidence during closing argument: the fact that a small person could easily pull the trigger of the gun in question. This fact was specifically used to respond to appellant's evidence that the trigger was extremely difficult to pull. Appellant had no chance to rebut the prosecutor's demonstration, a demonstration that could have easily been performed during trial when both sides could have fleshed out its implications thoroughly. This demonstration should have taken place during trial or not at all.

Id. at 511.

In this case, unlike *Williams*, the prosecutor did not introduce new evidence during closing argument. The bag of sugar was merely a visual illustration of a fact (it took 7.5 pounds of pressure to pull the trigger of the murder weapon) which had been put in evidence. *Wade v. State*, 197 Ga. App. 464, 465 (2) (398 SE2d 728) (1990). It was a "prop" and, as such, was "analogous to any other model or illustrative material, such as a skeleton in a medically related case or charts or maps in other sorts of cases." Id.

10. The prosecutor did not go outside the boundaries of permissible argument when she told the jury that "this is your community," nor when she said that defense counsel did "an excellent job" and was "a very, very good attorney," that rap music "refers to women in derogatory terms," or that Laney had a "smirk" on his face during the trial. See *Morgan v. State*, 267 Ga. 203, 204 (476 SE2d 747) (1996) (counsel are allowed considerable latitude of speech). See also *McClain v. State*, 267 Ga. 378, 385 (477 SE2d 814) (1996) (prosecutor may urge jury to convict for safety of community); *Greene v. State*, 266 Ga. 439, 447 (469 SE2d 129) (1996) (not improper to comment on defendant's courtroom demeanor), reversed on other grounds, *Greene v. Georgia*, 519 U. S. 145 (117 SC 578, 136 LE2d 507) (1996).

11. Laney asserts that he was deprived of a fair trial by the cumulative effect of additional errors. However, Georgia does not follow a cumulative error rule of prejudice. *Jenkins v. State*, 268 Ga. 468, 471 (491 SE2d 54) (1997).

*Judgment affirmed. All the Justices concur, except Fletcher, P. J.,*

*and Hines, J., who concur specially.*

FLETCHER, Presiding Justice, concurring specially.

1. The majority's conclusion in division 8 that the trial court properly excluded testimony by a defense witness ignores the plain language of OCGA § 17-16-6. The legislature provided specific remedies for the failure to comply with the discovery act, OCGA § 17-16-1 et seq. When a defendant fails to identify a witness as required by OCGA § 17-16-8, OCGA § 17-16-6 authorizes the trial court to grant a continuance or permit the state to interview the witness. The wholesale exclusion of evidence, however, requires "a showing of prejudice and bad faith."[3] The state did not argue that it would be prejudiced or that the defendant acted in bad faith and the trial court made no such finding. The record reflects that Laney gave the state one day's notice before calling the witness and made the witness available for an interview by the state. Therefore, the trial court exceeded its authority under OCGA § 17-16-6 in excluding the witness's testimony.

2. Furthermore, I cannot join the majority's approval in division 9 of the state's use of a bag of sugar in closing argument. The state's firearms expert testified that she used a spring gauge to measure the force required to pull the trigger. The state presented no evidence that lifting a bag of sugar was scientifically equivalent to the spring gauge test performed on the gun. During final argument, however, the prosecutor displayed a five-pound bag of sugar and argued that lifting the bag with one finger was equivalent to the 7.5 pounds of pressure required to fire the gun. Later the prosecutor also argued, "how could he not intentionally pull the trigger, because you can't even lift a five-pound bag of sugar with your finger." In the absence of supporting evidence, the state's display and argument was improper.[4]

Nevertheless, it is highly probable that these errors did not contribute to the verdict and I concur in the affirmance of the conviction.

I am authorized to state that Justice Hines joins in division 2 of this special concurrence.

DECIDED MAY 17, 1999 —
RECONSIDERATION DENIED JUNE 4, 1999.

*Dwight L. Thomas, Caprice J. Small,* for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Cari K. Johanson, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assis-*

---

[3] OCGA § 17-16-6.
[4] *Williams v. State,* 254 Ga. 508, 511 (330 SE2d 353) (1985).

*tant Attorney General, Daniel G. Ashburn, Assistant Attorney General,* for appellee.