## S07A0955. DALTON v. THE STATE.
### (647 SE2d 580)

THOMPSON, Justice.

Barbara Elaine Dalton was charged in a multi-count indictment with malice murder, aggravated assault, and other offenses arising from the kidnapping and shooting death of Donna Sanders (hereafter "Sanders"), and the kidnapping of Sanders' ten-year-old son, Wesley Sanders (hereafter "Wesley").[1] The State provided notice of its intention to seek the death penalty. The case was tried to a jury which found the existence of two statutory aggravating circumstances and fixed a sentence of life without parole. Dalton was sentenced accordingly.

On appeal, Dalton concedes that she "shot and killed Donna Sanders, the girlfriend of appellant's former boyfriend . . . without provocation, in the presence of the sons of both appellant and Sanders." She asserts, however, that the State failed to prove beyond a reasonable doubt either statutory aggravating circumstance which would support her sentence of life without parole, and that the trial court erred in denying a motion to suppress evidence seized from her vehicle. For the reasons that follow, we affirm.

Viewed in a light most favorable to the verdict, the evidence showed that Barbara Dalton had been in a 14-year romantic relationship with Mark Sullivan, which Sullivan had terminated. Thereupon, Sullivan began dating Sanders and he eventually moved into Sanders' home. On the day in question, ten-year-old Wesley arrived home from school to find Dalton waiting beside his driveway. Dalton

---

[1] The crimes were committed on May 23, 2002. A grand jury indicted Dalton on July 11, 2003, charging her with malice murder, felony murder (seven counts), aggravated assault (five counts), cruelty to children in the first degree, and possession of a firearm in the commission of a felony (three counts). The State served notice of its intent to seek the death penalty. At a trial commencing on July 12, 2004, Dalton was tried on the foregoing charges, except for four of the felony murder counts. She was found guilty as charged on July 15, 2004. The jury also found beyond a reasonable doubt the existence of two statutory aggravating circumstances, and it affixed a sentence of life without parole. Dalton was sentenced on August 26, 2004 to life without parole for malice murder, twenty years for one count of aggravated assault, twenty years for cruelty to children, plus five years for each of two weapon offenses (all sentences to run consecutively to each other). A motion for new trial was filed on September 22, 2004, amended on January 18, 2005, and denied on December 29, 2006. A notice of appeal was filed on February 2, 2007, pursuant to the grant of an out-of-time appeal. The case was docketed in this Court on March 15, 2007, and was submitted for a decision on briefs on May 7, 2007.

told Wesley to wait with her at the back of the house for his mother to return home. Sanders arrived at the house several minutes later, and shortly thereafter, Dalton, Sanders, and Wesley left in Sanders' truck. Sanders drove to a rural cemetery road and stopped the vehicle. Dalton ordered Sanders to continue to drive further down the road, but Sanders refused. Thereupon, all three exited the truck and stood at the back bumper. As Wesley was hugging his mother he observed a gun in Dalton's hand with her finger on or near the trigger; both he and Sanders were terrified. Sanders implored Dalton not to shoot her in the presence of her son. She also told Dalton that she had an appointment and asked to leave, but Dalton refused to allow her to go. The three reentered the truck with Dalton at the wheel, and she drove to the home of her son, Brian Dean.

Dean observed his mother arrive in an unfamiliar truck which she uncharacteristically parked at the rear of the house. Dalton, Sanders and Wesley entered Dean's home and went to the living room. Dean had friends visiting and Dalton directed that he ask his friends to leave. She then introduced Sanders to Dean as the woman "Mark has been living with for the last couple of months." Dean became alarmed, grabbed Dalton and asked her, "What's going on? You haven't done anything crazy [or] stupid?" Dalton responded, "No, we're just here to talk." When Sanders told Dean that she was frightened, he attempted to reach for the keys to the truck which Dalton had placed on a coffee table. At that point, Dalton produced a gun, shot Sanders in the head, and then fled from the house. Dean grabbed Wesley, who appeared to be in shock, and ran to a neighbor's house where the shooting was reported to the police.

After determining Dalton's guilt, the jury found beyond a reasonable doubt the existence of two statutory aggravating circumstances as set forth in OCGA § 17-10-30, as follows: (1) the offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: kidnapping with bodily injury, OCGA § 17-10-30 (b) (2); and (2) the offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind, OCGA § 17-10-30 (b) (7). The jury fixed the sentence at life imprisonment without parole.[2]

1. The evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Dalton was guilty of the crimes for which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[2] Under OCGA § 17-10-30.1 (a), imprisonment for life without parole may not be imposed unless there is found by the court or jury at least one statutory aggravating circumstance as defined by OCGA § 17-10-30.

2. Dalton contends that the evidence is insufficient to prove the OCGA § 17-10-30 (b) (2) aggravating circumstance beyond a reasonable doubt, to wit: that the offense of murder was committed while the offender was engaged in the commission of another capital felony, the kidnapping and bodily injury of Donna Sanders.

"A person commits the offense of kidnapping when he [or she] abducts or steals away any person without lawful authority or warrant and holds such person against his [or her] will." OCGA § 16-5-40 (a). The offense of kidnapping with bodily injury is a capital felony that may be considered as an aggravating circumstance supporting a death sentence for murder. *Tharpe v. State*, 262 Ga. 110, 115 (22) (b) (416 SE2d 78) (1992); OCGA § 16-5-40 (b). See also *Sears v. State*, 270 Ga. 834 (4) (514 SE2d 426) (1999). Bodily injury occurs when any physical injury, however slight, is inflicted upon the victim's body. *Smith v. State*, 236 Ga. 5, 10 (5) (222 SE2d 357) (1976); *Green v. State*, 193 Ga. App. 894 (1) (389 SE2d 358) (1989).

Viewed in a light most favorable to the verdict, the evidence established that Sanders was taken from her home and held at gunpoint by Dalton, that Sanders urged Dalton to allow her to leave for an appointment, but Dalton refused. Instead, Dalton drove Sanders and Wesley to Dean's home where Dalton shot and killed Sanders.

We reject Dalton's contention that Wesley's testimony was "unquestionably impeached" because he initially stated in an interview hours after his mother's death that Dalton produced the gun at Dean's home rather than at the cemetery road. A clinical psychologist explained that a child who is traumatized may need time to sort out the events he witnessed and would not be expected to disclose all the details immediately after the trauma. "It is within the province of the jury to resolve conflicts in trial testimony and assess the credibility of the witnesses." *Berry v. State*, 268 Ga. 437, 438 (1) (490 SE2d 389) (1997). The jury, upon proper instructions from the court, assessed the credibility of Wesley's testimony and concluded that a kidnapping had occurred. Id.

We find ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of kidnapping with bodily harm. *Jackson v. Virginia*, supra; *Tharpe*, supra; *Sears*, supra. See also *George v. State*, 192 Ga. App. 840 (1) (386 SE2d 669) (1989) (a demand by the victim to be let out of the vehicle may assist the jury in determining that the victim is being held against his will).

3. Dalton contends that her actions lack the aggression necessary to support the OCGA § 17-10-30 (b) (7) aggravating circumstance that the offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind.

This issue is controlled by our ruling in *McMichen v. State*, 265 Ga. 598 (2) (458 SE2d 833) (1995). McMichen shot and killed his estranged wife and her boyfriend outside her trailer. As the two bodies lay on the ground bleeding profusely, the defendant took his five-year-old daughter (the child of the female victim) from her mother's trailer, walked her past both bodies through the victims' blood, and left the child in his truck in view of the murder scene while he sat at a neighbor's home drinking beer. When the child was found a short time later, she was still in the truck with blood on her shoes, screaming for help for her mother. In that case we considered whether the defendant's conduct toward his child in the course of killing the victims, knowing but not intending that his actions would cause the child severe mental distress, is alone sufficient to prove the (b) (7) aggravating circumstance of depravity of mind to support a sentence of death. We concluded that the defendant's "gross disregard for the virtually certain and profound impact of his actions on his five-year-old child amply supports the jury's finding that the murder of [the child's mother] was outrageously and wantonly vile, horrible and inhuman in that it involved depravity of mind." Id. at 603 (2).

In the present case, Wesley was himself a victim of kidnapping along with his mother, he witnessed his mother plead with Dalton to spare her life while her son watched, and he was sitting next to his mother on a sofa when Dalton fired the fatal shot to her head. We find the evidence sufficient to enable the jury to find beyond a reasonable doubt the existence of the (b) (7) statutory aggravating circumstance of depravity of mind. *Jackson v. Virginia*, supra; *McMichen*, supra.

4. On the day following the shooting, investigators obtained a warrant to search Dalton's car, which was still parked a short distance from the driveway where Dalton first confronted Sanders and Wesley. Among the items seized from the vehicle were a machete, two rifles, ammunition, hunting equipment, and an ankle holster. Dalton filed a motion to suppress the fruits of the search asserting, inter alia, that the warrant was issued without probable cause. The trial court denied the motion based, in part, on its determination that there was sufficient probable cause to issue the warrant.

> A search warrant will only issue upon facts "sufficient to show probable cause that a crime is being committed or has been committed." OCGA § 17-5-21 (a). The magistrate's task in determining if probable cause exists to issue a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime

will be found in a particular place." [Cit.] Our duty in reviewing the magistrate's decision in this case is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrants. [Cit.] A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

*DeYoung v. State*, 268 Ga. 780, 786-787 (493 SE2d 157) (1997).

The investigating officer testified at the hearing on the motion to suppress that he prepared an affidavit for the issuance of a warrant to search a Lincoln Town Car registered to Dalton, which was parked 780 feet from the Sanders' driveway. The affidavit included information that Sanders and Wesley had been abducted from their home in Jasper County and were taken to a residence in Newton County where Dalton shot and killed Sanders. Based on that information, a warrant was issued which authorized a search of Dalton's vehicle for latent print evidence, and evidence of the crime of kidnapping.

Looking to the four corners of the affidavit, there was a fair probability that evidence of the kidnapping and murder would be found in the vehicle parked near the Sanders' driveway. Thus, we conclude that the magistrate had a substantial basis for determining that probable cause existed for issuance of the warrant.[3]

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 13, 2007.

*Teresa L. Smith, Anthony S. Carter*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.

---

[3] Having concluded that probable cause existed for the issuance of the warrant, we need not address the trial court's alternative theories of inevitable discovery and abandonment for admitting evidence of the search.