**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 16, 2023**

# In the Court of Appeals of Georgia

A23A0581. PRESIDENT v. THE STATE.

PHIPPS, Senior Appellate Judge.

Aaron President appeals from his armed robbery conviction, arguing that the evidence was insufficient to support the conviction, the prosecutor committed misconduct in closing argument, his lawyer rendered ineffective assistance by failing to object to that misconduct, and the jury charge was not tailored to the evidence. Finding no reversible error, we affirm.

Viewed in the light most favorable to the verdict,[1] the record shows that the victim left his workplace on Buford Highway in DeKalb County at about 9:00 p.m.

---

[1] "On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Bynes v. State*, 336 Ga. App. 223, 223 (784 SE2d 71) (2016) (citation and punctuation omitted).

on December 8, 2017, and began walking home. As the victim passed through a dark, tree-filled area, a man grabbed him from behind. One of the man's hands went around the victim's neck, and his other hand pressed something "sharp" and "pointy" into the victim's back. Although the victim never saw the object, he thought it was a knife. When the victim resisted, the man threw him on the ground, cut his pants from the top of the back pocket down to the ankle, and took his wallet. The victim screamed, and the man released him and ran away. The victim's skin was not cut, and he was not injured. The victim chased the man into an apartment complex and "lost him there."

Using his cell phone, the victim called 911 and reported that he had been attacked and robbed with a knife. Within three minutes, several police officers arrived at the scene. The victim described his attacker as a black male, approximately five feet eight inches tall, wearing a black hat, black pants, and a black jacket with a white sports logo. The victim also said that his wallet contained a debit card, credit card, ID, and "somewhere around 40 to 70" dollars in cash.

The victim's description of his attacker was relayed over the police radio, and another responding officer spotted a man matching the description walking along Buford Highway. Upon seeing the officer, the man "immediately made an abrupt turn" into a nearby apartment complex. That officer and another officer followed the

man on foot and — 11 minutes after the 911 call came in — found him "crouched down under the trees and bushes" near the complex's entrance gate, about a quarter of a mile away from the location of the attack. The man, later identified as President, was wearing a navy blue jacket with an Adidas logo on the front and a "sports ball" on the back. The victim's wallet was found on the ground within arm's reach of President.

President was detained, and the victim was brought over for a "show-up."[2] While police were waiting for the victim to arrive, President asked, "[W]hat are you charging me with, armed robbery?" — even though the officers had not named any crimes he was suspected of committing. When the victim arrived, he "immediately identified" President as his attacker. Police searched President and found $30 in cash on his person, along with a spark plug that, according to one of the officers, had a "small sharp tip . . . that could produce cutting."

President was charged with armed robbery and aggravated assault through the use of a "sharp object." The case proceeded to trial, where the State presented the testimony of the victim and four of the police officers who had responded to the 911

---

[2] One of the officers explained at trial that "[a] show-up is where the victim is brought to the scene in order to identify if that is the subject that committed the crime against them within a short time after the crime occurred."

call. President elected not to testify and presented no witnesses in his defense. The jury found him guilty of armed robbery, but not guilty of aggravated assault. President filed a motion for new trial, which the trial court denied, and this appeal followed.

1. President argues that the evidence was insufficient to support his armed robbery conviction. We disagree.

When reviewing a challenge to the sufficiency of the evidence, we determine whether "there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case[.]" *Veasey v. State*, 322 Ga. App. 591, 592 (745 SE2d 802) (2013) (citation and punctuation omitted). "Armed robbery is committed when, with the intent to commit theft, one takes property from another by the use of an offensive weapon." *Prater v. State*, 273 Ga. 477, 478 (1) (545 SE2d 864) (2001); see OCGA § 16-8-41 (a). Here, there was evidence that the attacker grabbed the victim from behind, pressed a sharp or pointy object against his back, shoved him to the ground, sliced open his pants, snatched his wallet, and fled. President was found hiding in nearby bushes shortly thereafter, wearing clothing that matched the victim's description and within arm's reach of the victim's wallet.

4

President spontaneously asked the police whether he was being charged with armed robbery, and the victim identified President as his attacker.

Despite this substantial evidence of his guilt, President challenges the strength of the State's case in several respects. For example, he points out that the victim described the attacker as wearing a black jacket and a hat, but President's jacket was blue and he was hatless when the police found him; the victim told police his wallet contained 40 to 70 dollars, but only 30 dollars was found on President's person; and President's Adidas jacket was common apparel that other people in the area could have been wearing. However, "[i]t was the role of the jury, not this Court, to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." *Veasey*, 322 Ga. App. at 593 (1) (a) (citation and punctuation omitted). The evidence was sufficient to support President's armed robbery conviction. See id.

2. President contends that the prosecutor committed misconduct during closing argument by (a) commenting on the victim's veracity and (b) using a hook knife to demonstrate the attacker's possible weapon. However, President did not object in either instance. Accordingly, he has waived his right to challenge the prosecutor's closing argument on appeal, even for plain error. See *Gates v. State*, 298 Ga. 324,

5

328-329 (4) (781 SE2d 772) (2016) (plain error review of State's closing argument not available "because [the defendant] did not object to the prosecutor's argument at trial" ); *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012) ("In the appeal of a non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal.") (citation and punctuation omitted).

3. In a related claim of error, President argues that his lawyer's failure to object to the prosecutor's misconduct during closing argument constituted ineffective assistance of counsel.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.

*Herndon v. State*, 309 Ga. App. 403, 403 (710 SE2d 607) (2011) (citation and punctuation omitted). We conclude that President has not satisfied this test with respect to either instance of alleged prosecutorial misconduct.

(a) During his closing argument, the prosecutor stated:

6

[E]verything [the victim] says makes perfect sense. He got robbed, he's a Hispanic guy walking home on Buford Highway at night by himself; he gets robbed. He points out some very specific features of the jacket that his attacker was wearing. He says that he had a sharp object pointed in his back. His pants are ripped off. All these things make perfect sense with the evidence. . . . I believe everything that [the victim] says is completely probable and reasonable and I don't think there's any issues with his testimony.

President contends that his lawyer should have objected because the prosecutor's comments ran afoul of the principle that "a prosecutor may not state to the jury his or her personal belief in a defendant's guilt[.]" See OCGA § 17-8-75; *Jordan v. State*, 293 Ga. 619, 623 (2) (b) (748 SE2d 876) (2013). We do not agree.

"Though a prosecutor may not express his or her personal belief as to whether a witness is credible, the prosecutor is permitted to argue reasonable inferences from the evidence, including any that address the credibility of the witnesses." *Stephens v. State*, 307 Ga. 731, 736 (2) (838 SE2d 275) (2020) (citation and punctuation omitted). Here, the prosecutor stated that the victim was credible because his account of the events made sense, not because the prosecutor had a personal belief in the victim's veracity. The prosecutor went on to note that the victim only wanted justice in the case, did not know President personally, and was a busy man who "work[ed]

7

72 hours a week and . . . ha[d] two kids, a wife[,] and a grandchild." Thus, the prosecutor's comments "were based on inferences from the evidence, not [his] personal beliefs, and, as such, the comments were proper." Id. at 736-737 (2). See also *Menefee v. State*, 301 Ga. 505, 515 (4) (a) (iii) (801 SE2d 782) (2017) ("Here, the prosecutor was not giving his personal opinion about the veracity of the witnesses, but rather was permissibly arguing for the jurors to come to the conclusion that the witnesses were believable based on the evidence presented.").

Further, even assuming President's attorney should have objected to the comments, her failure to do so did not prejudice President. While the prosecutor stated that the victim's account was credible, he also told the jurors that "personal credibility" was "for [them] to determine." Likewise, the court instructed the jurors that it was their job to determine the credibility of witnesses considering all of the facts and circumstances and that the evidence in the case did not include the opening or closing remarks of the attorneys. See *Bell v. State*, 294 Ga. 443, 446 (2) (754 SE2d 327) (2014) (finding no prejudice in counsel's failure to object to the prosecutor's alleged vouching for a witness's credibility where the jury was properly instructed about its responsibility to make credibility determinations). Moreover, as discussed in Division 1, the evidence of President's guilt was substantial, making it unlikely

8

that the prosecutor's comments affected the outcome of the trial. See *Ponder v. State*, 332 Ga. App. 576, 587 (2) (d) (774 SE2d 152) (2015) (improper witness bolstering was not prejudicial "[g]iven the substantial evidence of [the defendant's] guilt") (citation and punctuation omitted).

(b) At a different point in his closing argument, the prosecutor argued that the spark plug found on President's person could not have ripped the victim's pants "completely from the top to the bottom. . . . [A] knife causes that or some other object which I'll show you in just a second." The prosecutor later held up a specialized knife, stating:

> [T]his was not admitted into the evidence and I'm not saying this is the item that Mr. President used, but this is an item that is used to . . . cut things. Like, you know, if you want to cut carpet but not cut the . . . foam padding underneath, you would use this[.] . . . [Y]ou can use it for hunting, you can use it for cutting carpet, anything where you want to cut one particular thing but not cut what's underneath it. It's called a . . . hook knife[.] . . . But when I looked at this case and I was wondering how did he cut his pants like that but not cut his skin, . . . I've seen these things before and this is the only thing I could come up [with.]

The prosecutor then reiterated, "I'm not saying that Mr. President had this item. I'm just . . . making a reasonable inference from the evidence, circumstantial evidence,

9

that this is possibly the type of item that was used to cut his pants." Finally, the prosecutor said, "[Y]ou can make whatever logical assumption you want for that." President argues that his trial counsel rendered ineffective assistance by failing to object to the prosecutor's use of the demonstrative hook knife. We find no merit in this argument.

"[A] prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence[.]" *Scott*, 290 Ga. at 885 (2). This latitude may include the use of a "prop," "other model," or "illustrative material" as a demonstration to the jury, as long as the prosecutor does not introduce new evidence during closing argument. *Laney v. State*, 271 Ga. 194, 198 (9) (515 SE2d 610) (1999) (prosecutor permissibly used a five-pound bag of sugar to show the amount of force required to pull the trigger of a pistol), overruled in part on other grounds, *State v. Lane*, 308 Ga. 10, 23-24 (838 SE2d 808) (2020). Accordingly, in *Ellington v. State*, 292 Ga. 109 (735 SE2d 736) (2012), disapproved in part on other grounds, *Willis v. State*, 304 Ga. 686, 707 (11) (a), n. 3 (820 SE2d 640) (2018), the Supreme Court of Georgia ruled that the prosecutor was permitted "to display a hammer during his closing arguments, while informing the jury that the

hammer was not the actual murder weapon, because the evidence strongly suggested that a hammer had been used as the murder weapon." Id. at 144 (10) (d). See also *Norton v. State*, 293 Ga. 332, 335 (4) (745 SE2d 630) (2013) (trial court did not abuse its discretion by permitting prosecutor to present "a demonstration with a piece of wood 18 inches long, which represented the sawed-off shotgun that [the defendant] told investigators he and [the victim] struggled over").

Here, the prosecutor showed the jury a hook knife, arguing that the evidence permitted a reasonable inference that President had used a similar knife to cut the victim's pants without cutting his skin. However, the prosecutor was careful to tell the jury that he was *not* saying President used that knife and that jurors could make their own assumptions. Further, the hook knife was not admitted into evidence. Under these circumstances, the trial court would not have abused its discretion by allowing the demonstration even if defense counsel had objected. See *Norton*, 293 Ga. at 335-336 (4); *Ellington*, 292 Ga. at 144 (10) (d). It therefore follows that defense counsel was not ineffective for failing to object to the demonstration. See *Wesley v. State*, 286 Ga. 355, 356 (3) (b) (689 SE2d 280) (2010) (trial counsel was not ineffective for failing to make a meritless objection).

11

President cites *Knowles v. State*, 245 Ga. App. 523 (538 SE2d 175) (2000), in which, "[d]uring closing argument, defense counsel produced and measured a knife fitting the description of that used by [the defendant] in his attack on [the victim]." Id. at 526 (8). Upon objection by the State, the trial court told the jury to disregard this demonstration, and we affirmed that ruling. Id. *Knowles* simply illustrates the proposition that the bounds of an attorney's conduct during closing argument "are in the trial court's discretion." *Scott*, 290 Ga. at 885 (2). This deferential standard of review alternatively might have required us to affirm a contrary ruling by the trial court. President also cites *Paxton v. State*, 160 Ga. App. 19 (285 SE2d 741) (1981), in which we held that it was error to allow the prosecutor to admit into evidence a "long-barreled pistol from the police department" that was not connected to the crime in question but which might have appeared similar to the weapon used by the defendant. Id. at 22-25 (6). *Paxton* is distinguishable because the hook knife shown by the prosecutor in this case was not admitted into evidence, and the prosecutor repeatedly clarified that it was not the attacker's weapon. Thus, neither *Knowles* nor *Paxton* supports President's argument.

12

4. President asserts that the trial court "manifestly abused its discretion in charging on armed robbery." At President's request, the court gave the pattern jury charge on armed robbery:

> A person commits armed robbery when with the intent to commit theft, that person takes the property of another from the person or the immediate presence of another by use of an offensive weapon or by any replica, article, or device having the appearance of such weapon.

Afterward, President did not object to the charge, which tracked the statutory definition of the crime,[3] but he now contends that the charge was plain error because there was no evidence that the perpetrator used a replica or other device having the appearance of an offensive weapon. However, President "has waived plain error analysis of this issue because he requested the charge in question and made no objection to the charge at trial." *Pena v. State*, 297 Ga. 418, 424 (6) (a) (774 SE2d 652) (2015). See also *White v. State*, 297 Ga. 218, 219 (2) (773 SE2d 219) (2015) (appellant "waived even plain error analysis" of the propriety of the jury charge, "as he requested the pattern charge in question and agreed with the trial court's ultimate decision to give the charge").

---

[3] See OCGA § 16-8-41 (a).

13

In any event, the inclusion of the replica language in the jury charge was not plain error. The indictment charged President with armed robbery through the use of "a sharp object, an offensive weapon[.]" Although President contends that the charge, as given, could have allowed the jury to find him guilty of armed robbery through the use of a replica of a sharp object — a manner not alleged in the indictment — logic dictates that a replica of a sharp object would be, itself, a sharp object. Thus, the use of the "replica" language did not allow the jury to find President guilty of armed robbery in a manner not alleged in the indictment. Moreover, the trial court read the indictment to the jury and sent it out with them during deliberations. The court also instructed the jurors that the State had the burden to "prove every material allegation of the indictment" beyond a reasonable doubt and that they could find President guilty of armed robbery only if he committed the offense "as alleged in the indictment." By taking these steps, the trial court cured any possible error

in the charge. See *Seals v. State*, 358 Ga. App. 783, 787-788 (2) (856 SE2d 384) (2021).[4]

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*

---

[4] Within this same claim of error, President argues that the trial court erred in its response to the jury's question during deliberations, "[I]f the victim perceives someone has a weapon but never sees any kind of weapon, is it considered armed robbery, question mark, or is it only robbery?" While the court was discussing an appropriate response with counsel, President's lawyer said that the court could not answer the question and that the jurors "just need[ed] to refer back to the law they already ha[d]." The court agreed and told the jurors to refer to the instructions they had already received. On appeal, President claims that the court's response "did not specifically address the jury's question or seek to clarify their confusion." "However, because [President] expressly told the trial court that it should not answer the question, [he] invited the alleged error, and it therefore provides no basis for reversal." *Hicks v. State*, 295 Ga. 268, 275 (2) (759 SE2d 509) (2014) (citation and punctuation omitted).